In the Matter of GROWTH
DEVELOPMENT CORP.,
Debtor.

Richard FAZIO, Movant,

v.

GROWTH DEVELOPMENT
CORP., Respondent.

Bankruptcy No. A91–83569–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

May 31, 1994.

Order Denying Reconsideration
July 12, 1994.

James W. Dilz, Swift, Currie, McGhee & Hiers, Atlanta, GA, for movant.

Albert N. Remler, Remler, Near & Melikian, P.C., Atlanta, GA, for debtor/respondent.

Donald F. Walton, Acting U.S. Trustee, Guy G. Gebhardt, Asst. U.S. Trustee, James H. Morawetz, Atty. Advisor, Office of the U.S. Trustee, Atlanta, GA.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion for Relief from the Automatic Stay or, in the Alternative, Allowance of an Administrative Expense Claim, filed in this case by Richard Fazio (hereinafter "Fazio"). By his Motion, Fazio seeks authority to enforce

an allegedly postpetition claim against Growth Development Corporation (hereinafter "Debtor"), an action which both the Debtor and the United States Trustee oppose. The matters involved herein constitute a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B), (G), & (O). After considering the oral and written arguments presented by the parties involved, the Court will make its decision based upon the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The facts before the Court on this Motion are virtually undisputed. In March of 1991, Fazio extended credit to the Debtor and received a promissory note (hereinafter "Note") in return. The Note was payable in one installment of $108,500.00, due on April 30, 1991. Unfortunately for Fazio, the Debtor was unable to make this payment, thereby defaulting under the terms of the Note. Attempts by Fazio to force the Debtor to satisfy its obligation were effectively prohibited by the automatic stay of 11 U.S.C. § 362 when the Debtor filed a petition in this Court under Chapter 11 of the Bankruptcy Code.

Despite the automatic stay, Fazio still had recourse under the Note. Michael R. Zack and Fay Russell, both corporate officers of the Debtor, guaranteed the Debtor's obligation by executing an Unconditional and Irrevocable Guaranty of Payment dated March 30, 1991. Fazio, therefore, commenced a civil action against Zack and Russell in the United States District Court for the Middle District of Georgia. The District Court entered judgment against Zack on December 9, 1992, and against Russell on May 6, 1993, as amended on June 3, 1993. These

judgments awarded Fazio the sum of $115,373.83, plus costs, interest, and attorney's fees.

In order to enforce these judgments, Fazio commenced garnishment actions against Russell and Zack, naming the Debtor as garnishee. At the time, Zack was drawing a salary of $90,000.00 from the Debtor. Fazio included Russell in the garnishment in case he resumed drawing any salary or wages. Fazio sought this Court's authority to proceed with these garnishments by filing a Motion for Relief from Stay, arguing that the garnishment of wages payable by the Debtor would not diminish the estate. The Debtor did not oppose this request, so the Court granted the Motion by Order dated July 27, 1993.

Fazio filed the garnishment action in the Superior Court of Greene County, Georgia, on August 6, 1993. This action gave rise to a continuing garnishment, which required the Debtor, as the garnishee, to file answers at forty-five day intervals. *See* O.C.G.A. § 18–4–113(a)(2).[1] The Debtor filed its initial answer to the garnishment, but failed to file any more thereafter. After falling into default, the Debtor could have reopened the case as a matter of right within fifteen days by payment of costs pursuant to O.C.G.A. § 18–4–115(a).[2] The Debtor failed to exercise that right, and the case remained in default. In view of the fact that the default continued for more than fifteen days, the state court entered a default judgment against the Debtor on December 6, 1993, in the amount of $126,574.19. Nevertheless, the Debtor still had the ability to obtain relief from this default judgment. Georgia law allows a garnishee to reduce a default judgment in the following manner:

> If the garnishee fails or refuses to file an answer at least once every 45 days, the garnishee shall automatically become in default. The default may be opened as a matter of right by the filing of the required answer within 15 days after the day of default upon payment of costs. If the case is still in default after the expiration of such period of 15 days, judgment by default may be entered at any time thereafter against garnishee for the amount claimed to be due on the judgment obtained against the defendant.
>
> O.C.G.A. § 18–4–115(a).

---

1. Specifically, this provision provides as follows:

   The summons of continuing garnishment shall be directed to the garnishee, who shall be required:

   . . .

   (2) To file further answers for the remaining period covered by the summons of continuing garnishment. Further answers shall be filed no later than 45 days after the previous answer date. . . .

   O.C.G.A. § 18–4–113(a)(2).

2. This provision provides as follows:

When a judgment is rendered against a garnishee under Code Section 18–4–90, on a motion filed not later than 60 days from the date the garnishee receives actual notice of the entry of the judgment against him, he may, upon payment of all accrued costs of court, have the judgment modified so that the amount of the judgment shall be reduced to an amount equal to the greater of $50.00 or $50.00 plus 100 percent of the amount by which the garnishee was indebted to the defendant ...

O.C.G.A. § 18–4–91. Once again, the Debtor failed to take action, and thereby became liable for the entire $126,574.19 default judgment.

With yet another judgment in hand, Fazio commenced a second garnishment action in the state court. The Debtor was named as the defendant, and Greenelake Development Company, Port Armor Acquisition Company, Farmers Bank of Greensboro, Remler, Near & Melikian, P.C., Citizens Union Bank, and Central & Southern Bank were named as the garnishees. On the day Fazio commenced this action, he submitted a Notice of Filing of Garnishments to this Court. Thereafter, the Debtor filed an emergency motion to stop the garnishments. The Court held a conference with the parties involved on March 8, 1994, and directed Fazio to dismiss the garnishment proceedings. Before allowing Fazio to take any further action against the Debtor, the Court directed him to file this Motion for Relief from Stay, which came before the Court on a hearing held April 19, 1994.

The parties presented several arguments on various issues during the chambers conference and the Court hearing. They also filed briefs in support of their respective positions. A careful review of all the arguments presented reveals that the Court must address four specific issues. The first issue is whether a violation of the automatic stay occurred when the state court entered a default judgment against the Debtor. The Debtor argues that the default judgment violates the stay and is void *ab initio*. If so, there would be no judgment to enforce against the Debtor. Assuming no violation of the automatic stay occurred at that time,

the second issue is whether the automatic stay applies to Fazio's attempt to enforce the default judgment through a second garnishment proceeding. Fazio contends that the automatic stay does not apply since the default judgment creates a postpetition claim against the Debtor. In support of his position, Fazio relies upon the Georgia Court of Appeals case of *Shaheen & Co. v. NationsBank of Georgia*, 212 Ga.App. 333, 441 S.E.2d 769 (1994), which found the automatic stay not to apply in a similar situation.[3]

If the Court finds that Fazio's garnishment proceeding is prohibited by the automatic stay, the third issue which must be addressed is whether the facts and circumstances of this case entitle Fazio to relief from the stay. Finally, if relief from the automatic stay is not granted, the fourth issue is whether Fazio should receive an administrative expense priority for his claim. Fazio argues that he at least should qualify as a priority claimant since he is a victim of the Debtor's failure to respond to the garnishment action as required by Georgia law.

The Court will address each of these issues separately in the following Conclusions of Law:

## CONCLUSIONS OF LAW

### A. VIOLATION OF THE AUTOMATIC STAY

A threshold issue in this proceeding is whether the state court default judgment against the Debtor gives Fazio a valid claim. Specifically, the Debtor contends that a violation of the automatic stay of 11 U.S.C. § 362 occurred when the state court entered the default judgment during Fazio's first garnishment proceeding. The law within the Eleventh Circuit is well settled that any acts taken in violation of the automatic stay are void *ab initio* and have no effect. *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir. 1984); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982); *Rogers v. Overstreet (In re Rogers)*, 164 B.R. 382, 388 (Bankr.N.D.Ga.1994) (Drake, B.J.).

**3.** The Court will address *Shaheen* in greater detail in the Conclusions of Law below.

If, as the Debtor argues, the default judgment violated the automatic stay, it would have no legal effect, and Fazio would have no claim against the Debtor.

The Court, however, does not agree with the Debtor's argument. On July 7, 1993, Fazio filed a motion seeking relief from the automatic stay in order to allow him to commence his state court garnishment proceedings, naming the Debtor as garnishee. The Debtor offered no opposition, and the Court lifted the stay by Order dated July 27, 1993. In not opposing the request for relief from stay, the Debtor consented to becoming a part of the state court proceeding. The Debtor now claims, however, that it never consented to having a default judgment entered against it. Nevertheless, the Debtor's original consent encompassed all of the benefits and consequences that might result from being a party to the garnishment action. The default judgment was a natural consequence of lifting the stay for the state court proceeding. The Debtor may not come before the Court now and argue, after the fact, that its consent did not extend to the possibility of a default judgment being entered against it.

If the Court accepts the Debtor's argument that the automatic stay prevents an effective default judgment in this case, the result would be to grant a debtor an unwarranted amount of control over a state court garnishment proceeding. A debtor unhappy with the garnishment proceeding simply could refuse to file its answers as required by state law, falling into default. If the resulting default judgment had no legal effect, the debtor's conduct would virtually destroy a remedy this Court had previously allowed the creditor to pursue. Such a result stands contrary to notions of justice and fair play, and the Court will not allow it. Therefore, the Court concludes that its Order dated July 27, 1993, lifting the automatic stay, allowed the state court to enter a default judgment against the Debtor.

Even if the previous lift stay Order did not encompass the possibility of a default judgment, it is worth noting that the entry of this judgment likely would not have violated the automatic stay. The automatic stay has

limited application to events that occur postpetition. *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985). Proceedings and claims that arise postpetition are not subject to the automatic stay. *FAA v. Gull Air, Inc. (In re Gull Air, Inc.)*, 890 F.2d 1255, 1263 (1st Cir.1989); *In re Shuman*, 122 B.R. 317, 318 (Bankr. S.D.Ohio 1990). Rather, it is the *enforcement* of these claims that may be prohibited by the automatic stay. *See* 11 U.S.C. § 362(a)(3); *Shuman*, 122 B.R. at 318. In this case, the default judgment arose as a result of the Debtor's postpetition conduct, making it a postpetition claim. The automatic stay did not prevent the creation of Fazio's postpetition claim against the Debtor.

## B. APPLICATION OF THE AUTOMATIC STAY

The second issue before the Court is whether the automatic stay applies to Fazio's attempt to enforce the default judgment through a second garnishment proceeding. Fazio argues that he has a claim against the Debtor that arose postpetition, and the automatic stay does not prevent the enforcement of postpetition claims. In support of his argument, Fazio points to the recent Georgia Court of Appeals decision of *Shaheen & Co. v. NationsBank*, 212 Ga.App. 333, 441 S.E.2d 769 (1994). Since that case was decided under virtually identical circumstances as those currently before the Court, Fazio claims that *Shaheen* is controlling.

Specifically, the creditor in *Shaheen* obtained a judgment against R.J. Fasteners, Inc. (hereinafter "Fasteners") and Ronald Jacobson, an employee of Fasteners. Fasteners' ensuing Chapter 11 bankruptcy prevented the creditor from enforcing its judgment against Fasteners. Nevertheless, the creditor filed a garnishment action against Jacobson, naming Fasteners as garnishee, seeking Jacobson's wages. As did the Debtor in this case, Fasteners failed to answer the garnishment, and the creditor obtained a default judgment against Fasteners pursuant to O.C.G.A. § 18–4–90. As previously noted, this default judgment made the garnishee indebted to the creditor for the debts of its employee. The creditor then filed another

garnishment action, this time against Fasteners' bank accounts, to enforce the default judgment, naming NationsBank the garnishee. NationsBank answered the garnishment by claiming that the creditor's action was stayed by Fasteners' Chapter 11 case. The trial court agreed, but the Georgia Court of Appeals reversed.

In reversing the lower court, the *Shaheen* court first concluded that "[w]hen the default judgment was obtained against Fasteners, it was converted to Fasteners' post-bankruptcy debt by Fasteners' post-bankruptcy failure to respond to the garnishment of Jacobson's wages." *Id.* at 334, 441 S.E.2d 769. In other words, the postpetition default gave rise to a new claim against Fasteners which was separate and distinct from its prepetition claim. *Shaheen* then proceeded to state that the automatic stay does not apply to provide protection against the enforcement of postpetition claims. *Id.* Since the creditor's claim against Fasteners amounted to a postpetition debt, the Georgia Court of Appeals allowed the creditor to garnish Fasteners' bank accounts.

■ The Debtor in this case does not agree with Fazio that the Court should follow *Shaheen* and its proposition that the automatic stay does not bar the collection of postpetition claims. Specifically, the Debtor argues that *Shaheen* fails to consider the application of 11 U.S.C. § 362(a)(3) to postpetition claims. This provision provides as follows:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

> .    .    .    .    .

> (3) *any act to obtain possession of property of the estate* or of property from the estate or to exercise control over property of the estate

11 U.S.C. § 362(a)(3) (emphasis added). Since Fazio seeks to obtain property of the estate to enforce the default judgment, the Debtor argues that the automatic stay applies to Fazio's attempts to garnish the Debtor's accounts.[4]

■ At the outset, the Court will consider to what extent, if any, the Georgia Court of Appeals' decision in *Shaheen* controls the matter *sub judice*. It would be misleading to state that this Court, a court of federal jurisdiction, is bound by decisions of state courts. Under the principle of *stare decisis*, the only precedential authority this Court is bound to follow are those decisions emanating from the Eleventh Circuit Court of Appeals and the United States Supreme Court.[5] Nevertheless, many issues in bankruptcy require the application of state law, and the decisions

---

4. It is worth noting that the Debtor has relied upon two other subsections of 11 U.S.C. § 362 to oppose the relief Fazio is requesting in his Motion. Both of these arguments, however, can be summarily dismissed. For example, the Debtor argues that the default judgment itself violated § 362(a)(1) because it was a continuation of a judicial proceeding against the Debtor. This argument lacks merit because, as previously discussed, the Court lifted the automatic stay to allow Fazio to commence his garnishment proceeding involving the Debtor. The Debtor also contends that Fazio's claim is prohibited by § 362(a)(6) because it arose before the commencement of the bankruptcy case. As will be discussed further below, the default judgment gives rise to a claim that is completely independent and separate from any claim which may have existed prior to that time. Fazio's claim against the Debtor was brought about by the Debtor's postpetition conduct, making it a postpetition claim. Therefore, neither subsection applies to this case.

5. The Court notes that it is bound to apply the orders of a district court which has heard a case

on appeal and then returned that case to the bankruptcy court. Arguably, however, the binding authority of such district court decisions extends no further than the confines of that particular case. It, therefore, remains probable that district court opinions from the same district only offer persuasive authority for bankruptcy judges hearing later cases. On this question, one court has stated:

> [A] decision by a district judge is also not binding on bankruptcy judges in the district, because the bankruptcy court is a "unit" of the district court, and not an inferior court. A district judge sits in the same court as the bankruptcy judges, and his or her decision, even on an appeal from a bankruptcy judge, is another decision of the same court. Such a decision has no binding authority on other judges in the same court, including bankruptcy judges.

*Coyne v. Westinghouse Cred. Corp. (In re Globe Illumination Co.),* 149 B.R. 614, 619 (Bankr. C.D.Cal.1993).

of state courts are the foremost authority on the application and interpretation of state laws. Therefore, this Court finds *Shaheen* controlling to the extent it interprets state law. As for the interpretation of federal bankruptcy law, however, *Shaheen* simply constitutes persuasive authority and will be accorded the same deference this Court gives to the nonbinding decisions of other courts.

The law of the State of Georgia is important to this case since, as a general matter, claims of creditors are determined by state law. Therefore, this Court must look to state law to determine the character of the right Fazio is asserting against the Debtor. *See* 3 DAVID G. EPSTEIN, ET AL., BANKRUPTCY § 11–2, at 74–75 (1992) (hereinafter "EPSTEIN"); *see also Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (state law determines property interests in bankruptcy). Georgia's garnishment laws, as interpreted by the Georgia Court of Appeals in *Shaheen,* establish that Fazio has a postpetition claim against the Debtor. Specifically, *Shaheen* stands for the proposition that a claim arises against the garnishee at the time the garnishee falls into default by failing to file answers in a continuing garnishment proceeding. The claim that arises from this default is separate and distinct from any claim which may have existed prior to that time. As such, the fact that Fazio has a prepetition claim against the Debtor arising from the Note is not connected to the obligation arising from the default judgment. It was the Debtor's *postpetition* conduct of failing to respond to the garnishment that resulted in a postpetition debt at the time the state court entered the default judgment. It was in no way conditioned upon any previous obligation existing between the Debtor and Fazio. Therefore, under the rule of *Shaheen,* the Court concludes that Fazio has a postpetition claim against the Debtor.

Having established that a claim exists under state law, the Court must look to federal law to determine how to treat it in bankruptcy. Unfortunately, *Shaheen* is of little help on this issue as the Georgia Court of Appeals appears to have erred in its application of bankruptcy law to the treatment of a postpetition claim. The automatic stay does not prevent a claim from arising postpetition. *See FAA v. Gull Air, Inc. (In re Gull Air, Inc.),* 890 F.2d 1255, 1263 (1st Cir.1989); *In re Shuman,* 122 B.R. 317, 318 (Bankr. S.D.Ohio 1990). Nevertheless, certain aspects of 11 U.S.C. § 362 severely limit the ability of a creditor to satisfy such a claim. *Turner Broadcasting Sys., Inc. v. Sanyo Elec., Inc.,* 33 B.R. 996, 1000 n. 2 (N.D.Ga. 1983). Therefore, the mere fact a claim arises postpetition does not automatically entitle a creditor to enforce it, as *Shaheen* presupposes.

In concluding that the automatic stay of 11 U.S.C. § 362 does not prevent the enforcement of a postpetition claim against a debtor, *Shaheen* fails to consider the effect of § 362(a)(3). Under this provision, the automatic stay applies to "any act to obtain possession of property of the estate." The language of this provision is devoid of any distinction between prepetition and postpetition claims. So long as a creditor attempts to obtain property of the estate, the automatic stay remains in full force and effect. *See, e.g. Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.,* 944 F.2d 199, 201 (4th Cir.1991) (§ 362(a)(3) prevents attachment or execution of postpetition judgment); *In re Woodall,* 81 B.R. 17, 18 (Bankr.E.D.Ark.1987) (automatic stay prevents postpetition creditors from taking action against property of the estate); *In re Dakota Indus., Inc.,* 31 B.R. 23, 25 (Bankr.D.S.D.1983) (automatic stay prevents enforcement of postpetition unsecured claim); *see also National Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705, 707–08 (7th Cir.1994) (noting that § 362(a)(3) encompasses every effort to exercise control over estate property). The fact that the creditor may be trying to satisfy a postpetition claim is irrelevant.[6]

---

**6.** Fazio suggests that neither the creation nor the enforcement of postpetition claims falls subject to § 362's automatic stay. Such a sweeping proposal, however, offends the spirit of that section as well as the holdings of case law cited by Fazio himself. *See In re Vacuum Cleaner Corp. of America,* 58 B.R. 101, 102 (Bankr.E.D.Pa.1986) (holding that the stay did not preclude establishment of a postpetition claim against the debtor but pointing out that § 362 would prevent any

In this case, Fazio has a postpetition claim against the Debtor by virtue of the garnishment default judgment, and such a claim affects the Debtor's liabilities. *See In re Gray*, 97 B.R. 930, 937 (Bankr.N.D.Ill.1989); *see also In re Sowers*, 164 B.R. 256, 259 (Bankr.E.D.Va.1994) (attempts to collect money after garnishment default is action against employer-garnishee). Now, Fazio is attempting to institute a garnishment proceeding against the Debtor to enforce his postpetition claim. In so doing, he wishes to garnish various accounts of the Debtor. There can be no dispute that these accounts are property of the Debtor's estate in bankruptcy. *See, e.g., In re Homan*, 116 B.R. 595, 599 (Bankr.S.D.Ohio 1990) (funds in savings account are estate property); *see also Patterson v. B.F. Goodrich Employees Fed. Credit Union (In re Patterson)*, 125 B.R. 40 (Bankr.N.D.Ala.1990), *aff'd* 967 F.2d 505 (11th Cir.1992); *Gassen v. Universal Bldg. Materials, Inc. (In re Berkley Multi–Units, Inc.)*, 69 B.R. 638 (Bankr.M.D.Fla.1987). Pursuant to 11 U.S.C. § 362(a)(3), Fazio is prohibited from taking control of such property without first obtaining relief from this Court. Therefore, the Court concludes that the automatic stay prevents Fazio from attempting to enforce his postpetition claim against the Debtor, and it respectfully declines to follow the Georgia Court of Appeals' decision in *Shaheen*.

### C. RELIEF FROM THE AUTOMATIC STAY

■ Upon the conclusion that the automatic stay applies to Fazio's garnishment action against the Debtor, the next issue the Court must consider is whether Fazio is entitled to relief from the stay. Relief may be granted under § 362(d) of the Bankruptcy Code, which provides as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

subsequent enforcement action on that claim); *In re Clinton Centrifuge, Inc.*, 81 B.R. 844, 847 (Bankr.E.D.Pa.1988) (noting postpetition claims

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

> (2) with respect to a stay of an act against property under subsection (a) of this section, if—

>> (A) the debtor does not have an equity in such property; and

>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). Unfortunately for Fazio, he is an unsecured creditor, and unsecured creditors are seldom entitled to relief from the automatic stay. *See* 1 EPSTEIN at 265–67. As an unsecured creditor, Fazio has no interest in property to be protected, so relief provided for by § 362(d)(2) is not applicable in this case. The same reasoning applies to the "lack of adequate protection" language of subsection (d)(1). Therefore, the only avenue of relief available to Fazio is other "cause" within the meaning of § 362(d)(1).

■ The term "cause" is not defined in the Bankruptcy Code. Instead, courts are required to make fact-specific inquiries and decide on a case by case basis whether cause exists to grant a creditor relief from the automatic stay. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir.1990); *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 127 B.R. 453, 455 (E.D.Cal.1991). In looking at the facts of this case, cause simply does not exist. At best, Fazio has an unsecured claim against the Debtor, *see, e.g., Dakota Indus.*, 31 B.R. at 25 (postpetition default judgment gives rise to unsecured claim), and he has not shown himself to be in any different situation than the other unsecured creditors in this case. If he is allowed to enforce and collect his claim against the Debtor, Fazio would be receiving special treatment. This special treatment, however, would be contrary to bankruptcy's important goal of equal treatment among creditors, and the Court finds it improper.

are not covered by automatic stay, but not addressing issue of enforcement).

The fact that Fazio's claim arose postpetition is not sufficient in and of itself to accord him any special status, at least with respect to the automatic stay. For example, a discharge under Chapter 11 occurs as follows:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose *before the date of such confirmation* ...

11 U.S.C. § 1141(d)(1)(A) (emphasis added). Even though Fazio's unsecured claim arose after the Debtor filed its bankruptcy petition, the Debtor may discharge it. Chapter 11 of the Bankruptcy Code makes no distinction between this postpetition debt and any other prepetition debts that a creditor may have against the Debtor. A debt is dischargeable so long as it arises prior to confirmation. Fazio holds a preconfirmation claim, and he has failed to establish why he should be allowed to collect his unsecured claim from the Debtor, while all other preconfirmation claims will be subject to discharge under § 1141(d)(1). Therefore, the Court concludes that no cause exists to grant Fazio's request for relief from the automatic stay.

### D. ADMINISTRATIVE EXPENSE PRIORITY

Since relief from the automatic stay is not appropriate in this case, the Court must address the final issue of whether Fazio's claim should be entitled to an administrative expense priority. Fazio contends that he qualifies as a priority claimant since he is a victim of the Debtor's postpetition failure to respond to the garnishment action as required by Georgia law. In making this argument, he points to the following provision of the Bankruptcy Code regarding the allowance of administrative expenses:

> After notice and a hearing, there shall be allowed administrative expenses, other

than claims allowed under section 502(f) of this title, *including*—

> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

11 U.S.C. § 503(b)(1)(A) (emphasis added). Both the Debtor and the Trustee oppose Fazio's administrative expense theory, arguing that his claim did not arise as an actual, necessary cost and expense of preserving the estate within the meaning of § 503.

The Court notes that § 503(b)(1)(A) applies to postpetition claims only. It involves costs and expenses incurred in preserving the estate, which comes into existence upon the filing of the bankruptcy petition. Since no estate in bankruptcy exists prior to the petition, no prepetition expenses can be incurred to preserve the estate. Nevertheless, the mere fact that Fazio has a postpetition claim against the Debtor does not automatically entitle him to an administrative expense. *See Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir.1988); *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986). Only those postpetition costs that fall within the scope of § 503 can be accorded such status.

The Eleventh Circuit, in the case of *Alabama Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.)*, 963 F.2d 1449 (11th Cir.1992), has addressed the issue of the scope of 11 U.S.C. § 503(b). In noting that the language of this subsection contains the word "including," the court rejected taking an overly narrow approach to the question of what claims qualify as an administrative expense.[7] In so doing, the court stated as follows:

> It is clear from the face of the statute, however, that expenses not explicitly listed in section 503(b) can receive administrative-expense status in one of two ways,

---

7. For example, the court rejected the approach of some courts that allowed an administrative expense claim only in those circumstances where the outgoing expense conferred some sort of benefit upon the estate and creditors. *N.P. Mining*, 963 F.2d at 1454 (disagreeing with *Burlington*

*Northern R.R. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700 (9th Cir.1988)). Therefore, a claim may qualify as an administrative expense, even if it does not confer any tangible benefit to the estate.

either as a nonlisted "actual, necessary" expense of preserving the estate under 503(b)(1)(A) or as a nonlisted administrative-expense under 503(b) in general. Either way, *there is room in the statute for courts to accord administrative-expense priority to postpetition expenses....*

*N.P. Mining,* 963 F.2d at 1452 (emphasis added); *see also In re Brendle's Stores, Inc.,* 164 Bankr. 523, 525 (Bankr.M.D.N.C.1994). The *N.P. Mining* court also quoted the following portion of COLLIER which supported its reasoning:

> A court might well conclude that there are to be allowed as administrative expenses claims not necessarily precisely covered by the provisions of section 503(b).... Further, what constitute actual and necessary costs and expenses of preserving an estate *might well be open to judicial construction.*

3 COLLIER ON BANKRUPTCY, ¶ 503.03, at 503–17 (15th ed. 1994) (emphasis added); *N.P. Mining,* 963 F.2d at 1452. Therefore, Fazio may be entitled to an administrative expense claim, even though his claim does not specifically fall within one of the enumerated provisions of 11 U.S.C. § 503(b). Furthermore, whether or not his claim is an actual and necessary expense may be open to judicial construction. As such, a court must look to the particular facts and circumstances of a case to determine if a particular claim should be accorded the status of an administrative expense.

After establishing how to determine the scope of 11 U.S.C. § 503(b), *N.P. Mining* discussed three circumstances under which postpetition claims have qualified as an administrative expense. The first category involves those expenses for the compensation of innocent victims of the estate's tortious conduct. The seminal case on this question is the United States Supreme Court's decision in *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). Specifically, the Court in *Reading* held that damages resulting from the negligence of a receiver in bankruptcy while acting within the

scope of his authority as receiver gave rise to actual and necessary costs of operating a debtor's business under Chapter XI of the former Bankruptcy Act and were entitled to priority status.[8] *Id.* at 485, 88 S.Ct. at 1766–67.

*Reading* involved a postpetition tort claim against a debtor's estate, and the Court found that the statutory objective of "fairness to all persons having claims against an insolvent," *Id.* at 477, 88 S.Ct. at 1762–63, mandated that postpetition tort claims be accorded priority status. Other cases using this reasoning to reach similar conclusions include *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.),* 755 F.2d 200, 202 (1st Cir.1985) (giving priority status to civil penalties arising from a nuisance); *Al Copeland Enters. v. Texas (In re Al Copeland Enters.),* 991 F.2d 233, 240 (5th Cir. 1993) (giving priority to statutory interest incurred on wrongfully withheld sales tax); *In re Alan Wood Steel Co.,* 2 B.R. 161, 163 (Bankr.E.D.Pa.1980) (tort claim of wrongful detention can give rise to administrative expense). Collectively, these cases stand for the proposition that damages arising from the postpetition tortious and wrongful conduct of a debtor may qualify as administrative expenses within the meaning of 11 U.S.C. § 503(b).

The second category of administrative expenses discussed in *N.P. Mining* are those costs incurred for environmental cleanup. An example is the decision reached by the Sixth Circuit in the case of *Lancaster v. Tennessee (In re Wall Tube & Metal Prods. Co.),* 831 F.2d 118 (6th Cir.1987), which awarded administrative expense priority to the costs incurred by the State of Tennessee in cleaning up a bankruptcy estate's hazardous waste site. Among other factors, that court relied upon "the importance of complying with laws that protect the public health and safety." *Id.* at 123. Therefore, similar circumstances may accord postpetition claims the status of administrative expenses under 11 U.S.C. § 503(b).

---

**8.** Even though *Reading* involved the application of a provision of the former Bankruptcy Act, *N.P. Mining* found that it remains binding prece-

dential authority under the current Bankruptcy Code. *Id.* at 1456.

The third *N.P. Mining* category of administrative expenses involves civil penalties incurred due to the debtor's failure to comply with state law. *N.P. Mining* involved such a situation; the Eleventh Circuit accorded administrative expense status to punitive civil penalties assessed for postpetition mining operations that failed to comply with state law. *Id.* at 1453. The Eleventh Circuit based its decision on the federal policy embodied in 28 U.S.C. § 959, which provides in part as follows:

> Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, *including a debtor in possession,* shall manage and operate the property in his possession as such trustee, receiver or manager *according to the requirements of the valid laws of the State* in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b) (emphasis added). This policy of ensuring compliance with state law was sufficient for the court in *N.P. Mining* to accord administrative status to noncompensatory civil penalties that arose due to the debtor's violation of state environmental regulations. Such costs were ordinarily incident to the operation of the debtor's mining operation. *Id.* at 1458. Under these circumstances, an award of administrative expenses pursuant to 11 U.S.C. § 503(b) may be proper.

In turning to the facts of this case, the Court notes that Fazio's claim against the Debtor does not squarely fall within one of the three *N.P. Mining* categories. For example, Fazio's claim did not arise from the tortious conduct of the Debtor. Furthermore, it does not implicate any laws necessary to protect the public health or safety. Finally, the state court default judgment is not a punitive civil fine for failure to comply with state law. Nevertheless, the categories discussed in *N.P. Mining* are not meant to be exhaustive as to what claims may qualify as an administrative expense. It is important to consider the specific facts and circumstances of a particular case in deciding whether an award of administrative priority is appropriate. Moreover, the facts and policies of those situations discussed in *N.P. Mining* lend support to Fazio's argument for the allowance of his claim. Therefore, the Court is inclined to grant Fazio's request that he be entitled to an administrative expense claim against the Debtor.

In reaching this decision, the Court is persuaded by the presence of four specific factors within this case. First, Fazio suffered an injury due to the Debtor's conduct. Georgia law provided Fazio with a viable opportunity to enforce his judgment against Zack and Russell through the state court garnishment proceeding. The Debtor's intervening conduct of failing to answer the garnishments as required by O.C.G.A. § 18–4–113 prevented Fazio from collecting funds in satisfaction. While the Debtor's conduct is not tortious, as in *Reading,* or a nuisance, as was the case in *Charlesbank Laundry,* both these cases support the general proposition that an innocent party damaged by a debtor's postpetition wrongful conduct should be entitled to compensation for any injury received therefrom. Fazio is an innocent victim of the Debtor's failure to respond to these garnishments, and giving a priority status to his claim is consistent with the spirit of *Reading.*

The second factor important in the Court's decision is that Fazio's claim is a result of the Debtor's failure to follow state law. Answering a continuing garnishment perhaps does not fall within the literal meaning of 28 U.S.C. § 959(b) requiring a debtor in possession to "operate and manage" its property in accordance with state law. Nevertheless, both 28 U.S.C. § 959(b) and *N.P. Mining* support the general proposition that debtors in possession are expected to comply with state law while they still are operating their businesses. The fact that the Debtor is under the Chapter 11 protection of this Court does not authorize it to ignore, or excuse it from ignoring, Georgia's procedural laws regarding garnishment proceedings. It is the Debtor's failure to follow this simple state law requirement to answer Fazio's continuing garnishment that gave rise to Fazio's postpetition claim. Since the Debtor is expected to

comply with the laws of this State, Fazio should be entitled to an administrative claim.

The third factor this Court finds persuasive is the fact that the Debtor failed to comply with this Court's Order lifting the automatic stay to allow Fazio to proceed with his garnishment action against Zack and Russell. When the Court lifted the stay, it was aware that the Debtor was to participate in this action as a garnishee. In giving its approval of Fazio's state court action, the Court expected the Debtor to cooperate. By failing to comply with the requirements of the state court garnishment proceeding, the Debtor acted contrary to this Court's Order lifting the stay.

The situation is somewhat analogous to what occurs when a creditor violates the automatic stay. When this happens, a creditor may be held accountable for violating the stay, even if the conduct in question was unintentional. Once a court lifts the stay, the positions are reversed. At that point, the debtor should be held accountable for any actions which frustrate the purpose of the lift stay order, even when the conduct in question is unintentional. Otherwise, a debtor would have the ability to frustrate the purposes of a court order with impunity. To prevent such a result, it is necessary to return the parties to the positions they would have occupied had no violation of the court's lift stay order occurred. Therefore, the Debtor's failure to comply with this Court's Order lifting the stay constitutes sufficient grounds to give Fazio an administrative expense claim.

The final factor of which the Court takes note is the potential for abuse that exists in situations in which an officer of a debtor corporation can entangle his employer with his own financial obligations to the extent that the officer personally benefits from the automatic stay. A garnishment action is one such situation, because a corporate officer of the employer garnishee may be able to influence the corporation's actions with respect to the garnishment proceedings. Zack, as the defendant in the state court garnishment action and the Debtor's vice president, personally benefitted from the Debtor's failure to respond to Fazio's garnishment. No evidence implies that Zack somehow manipulated the Debtor to prevent his wages from being garnished, and the Court does not conclude that any such acts occurred. Nevertheless, the events that occurred in this case have provided Zack, a nondebtor, with the protection of the automatic stay. Fairness dictates that Fazio should not have to pay for this benefit that Zack, as a corporate officer, received as a result of the Debtor's default.

After considering all the facts and circumstances surrounding this case, the Court concludes that Fazio is entitled to an administrative expense claim against the Debtor. A question remains, however, as to the amount of this claim. The state court entered a judgment against the Debtor in the amount of $126,574.19. Had the Debtor not defaulted, however, the actual garnishments only would have garnered approximately $3,000 for Fazio. The actual damage Fazio incurred by the Debtor's default is much less than the amount of the judgment against the Debtor.[9] To accord administrative expense status to the entire amount would provide Fazio with an unwarranted windfall. Therefore, the Court will give Fazio an administrative expense claim only to the extent necessary to compensate him for the loss he suffered.[10] This result comports with the *Reading Co. v. Brown* policy of compensating innocent victims for their actual losses only and not overcompensating them. Fazio's claim against the Debtor over and above his administrative expense shall be treated as any other general unsecured claim.

### CONCLUSION

In conclusion, the entry of a default judgment against the Debtor did not violate the

---

**9.** The Court assumes that Fazio could still recover the entire debt directly from the individual guarantors rather than pursuing the garnishee for such a limited portion. *See* 38 C.J.S. *Garnishment* § 293(c).

**10.** The amount of Fazio's administrative expense claim should include what he should have received from the garnishment proceeding, plus any additional court costs which may have been awarded as part of the default judgment.

automatic stay. The default judgment was a natural consequence of this Court's previous Order lifting the automatic stay to allow Fazio to commence his state court garnishment proceeding. Nevertheless, the automatic stay does prevent Fazio from enforcing this judgment against the Debtor. Furthermore, Fazio has failed to establish cause to entitle him to relief from the automatic stay. Finally, Fazio is entitled to an administrative expense claim, but only to the extent necessary to compensate him for the loss sustained by the Debtor's default. Accordingly, Fazio's Motion for Relief from the Automatic Stay or, in the Alternative, Allowance of an Administrative Expense Claim is hereby **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

### *ORDER ON RECONSIDERATION*

This matter comes before the Court on the Motion to Alter or Amend Judgment or, in the Alternative, to Amend Factual Findings, filed in this case by Richard Fazio (hereinafter "Fazio"). By his Motion, Fazio requests that the Court reconsider certain aspects of its Order dated May 31, 1994 (hereinafter "May Order") pertaining to Fazio's previous Motion for Relief from the Automatic Stay or, in the Alternative, Allowance of an Administrative Expense Claim. The matters involved herein are a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B), (G), and (O). Based upon the following discussion, the Court will deny the Motion.

### DISCUSSION

By Order dated July 27, 1993, this Court lifted the automatic stay to allow Fazio to commence a state court garnishment proceeding, naming Growth Development Corporation (hereinafter "Debtor") the garnishee. Fazio commenced this action to garnish the wages of certain employees of the Debtor in an attempt to satisfy a judgment entered in the United States District Court for the Middle District of Georgia. Specifically, this state court proceeding was a continuing garnishment which, under Georgia law, required the Debtor, as the garnishee, to file answers

every forty-five days. O.C.G.A. § 18–4–113(a)(2). After filing the initial answer, however, the Debtor failed to file any more. As such, the Debtor fell into default, and eventually, the state court entered a default judgment against the Debtor in the amount of $126,574.19. O.C.G.A. § 18–4–115(a).

With his default judgment in hand, Fazio sought authority from this Court to garnish the bank accounts of the Debtor. In the May Order, the Court denied that request, finding that cause did not exist to lift the automatic stay of 11 U.S.C. § 362. *See* May Order at 1017–18. Nevertheless, the Court did grant Fazio's request for an administrative expense claim, but limited that claim to the amount Fazio would have received in the garnishment proceeding had the Debtor not defaulted. *See* May Order at 1021–22. Testimony presented at a hearing prior to the May Order suggested that Fazio only would have received approximately $3,000 from the state court garnishments.

In bringing the current Motion, Fazio requests that the Court reconsider two specific aspects of the May Order. First, Fazio argues that he should be entitled to an administrative expense claim for the entire amount of the default judgment, instead of the limited amount allowed by the May Order. Second, assuming the Court does not agree, Fazio disputes the May Order's statement that he only would have garnered approximately $3,000. The Court will address these two issues below.

### A. *Limitation of Administrative Expense Claim*

▬▬▬ Fazio first disputes the conclusion of the May Order that his administrative expense claim should be limited to the amount he would have received had the Debtor not defaulted in the state court garnishment proceeding. Instead, Fazio asserts that the entire $126,574.19 default judgment should be accorded administrative expense status. As stated in the May Order, the Court does not feel it would be proper to grant such a request in that it would provide Fazio with an unwarranted windfall. Fazio argues that this conclusion is inconsistent with the decision of the Eleventh Circuit in the case of

*Alabama Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining )*, 963 F.2d 1449 (11th Cir.1992).

In *N.P. Mining*, the Eleventh Circuit held that punitive civil penalties assessed for post-petition mining operations qualified as administrative expenses. Fazio seems to argue now that a state court default judgment is analogous to the punitive civil penalty found in *N.P. Mining*. The Court, however, does not agree. Admittedly, it is not uncommon for a court to enter a default judgment to penalize a party under certain circumstances. For example, O.C.G.A. § 9–11–37(b)(2)(C) authorizes Georgia courts to render a judgment by default against a disobedient party in cases where that party fails to obey an order requiring it to provide or permit discovery. *See also* Fed.R.Civ.P. 37(b)(2)(C). Nevertheless, courts do not enter default judgments for punitive purposes only. *See* JACK H. FRIEDENTHAL, ET AL., CIVIL PROCEDURE § 9.4, at 444 (1985). More often than not, default judgments occur as a result of one party's failure to file answers as required under the pertinent rules of civil procedure.

The facts of this case present such a situation of a nonpunitive default. The Georgia state court entered judgment by default against the Debtor based upon the Debtor's failure to file answers to the continuing garnishment as required by O.C.G.A. § 18–4–113(a)(2). The default judgment was not an assessment of a penalty against the Debtor, and as such, this case is distinguishable from *N.P. Mining*. If the Court were to accept Fazio's argument, it would have to accord administrative expense status to *every* default judgment that occurs postpetition. This Court does not believe *N.P. Mining* was intended to have such a broad application.

The Court points out that it reached its conclusion of allowing Fazio a limited administrative claim after carefully considering the pertinent law and the special facts and circumstances of this case. In particular, Fazio suffered a specific harm when the Debtor defaulted in the state court garnishment proceeding. Fortunately, the monetary value of this harm is easily calculable, *i.e.*, it is the amount Fazio would have received had no default occurred. Allowing Fazio to recover

this amount as an administrative claimant returns the parties to the position they would have occupied had the Debtor followed proper state procedure in the first place. The Court believes such a result is consistent with the spirit of the Supreme Court decision in *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), which provided administrative expense priority to compensate innocent victims of a trustee's wrongful conduct. Therefore, the Court finds that Fazio's arguments for reconsidering this issue are without merit.

### B. Amount of Administrative Claim

The second issue raised by this Motion pertains to the specific amount to which Fazio is entitled as an administrative expense. In the May Order, the Court commented that Fazio only would have garnered approximately $3,000 had the Debtor not defaulted. *See* May Order at 1021. Fazio, however, disputes this figure, and argues that the amount is much greater. In addition, he requests that the Court hold an evidentiary hearing to determine the exact amount. The Court, however, finds Fazio's request to be a bit premature. The proper course of action is for Fazio to file his claim with the Court, and any disputes regarding the actual amount of the claim can be handled through the normal claims process. As for the $3,000 figure mentioned in the May Order, Fazio will not be restricted to that amount. Furthermore, should the parties be unable to arrive at an agreement as to the proper amount of Fazio's claim, the Court will hold an evidentiary hearing at the proper time.

### CONCLUSION

For the reasons stated in the above discussion, Fazio's Motion to Alter or Amend Judgment or, in the Alternative, to Amend Factual Findings is hereby DENIED.

**IT IS SO ORDERED.**