**DONE AND ORDERED.**

In re ER URGENT CARE HOLDINGS, INC., Debtor.

ER Urgent Care Management Co., Inc., Debtor.

Alan Goldberg, as Chapter 7 Trustee of ER Urgent Care Holdings, Inc., Plaintiff,

v.

Felicia Spuza and Spuza and Spuza, M.D. P.A., Defendants.

Bankruptcy Nos. 08–25688–BKC– LMI, 08–26530–BKC–LMI. Adversary No. 09–02340–LMI.

United States Bankruptcy Court, S.D. Florida.

Feb. 14, 2012.

Charles L. Neustein, Esq., Miami Beach, FL, for Debtor.

Ivan J. Reich, Esq., Michael D. Lessne, Ft Lauderdale, FL, for Plaintiff.

Kennan G. Dandar, Esq., Tampa, FL, for Defendants.

### MEMORANDUM OPINION ON ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FELICIA SPUZA'S MOTION FOR ATTORNEY FEES AND COSTS

LAUREL MYERSON ISICOFF, Bankruptcy Judge.

This matter came before the Court on Defendant's Motion for Attorney Fees and Costs (ECF # 52) (the "Motion for Attorney Fees"). The Court has reviewed the Defendant's Motion, the Plaintiff's Response to Motion for Attorney Fees and Costs (ECF # 57), the Plaintiff's Brief on Defendant's Entitlement to Only an Unsecured Claim for Attorney Fees and Costs (ECF # 58), Defendant's Memorandum of Law in Support of its Motion for Attorney Fees and Costs (ECF # 59) and Defendant's Supplemental Memorandum of Law in Support of Prevailing Party Attorney Fees are an Administrative Expense (ECF # 60).[1]

### Factual Background

ER Urgent Care Holdings Inc., ("Holdings") operated same day emergency urgent care facilities, medical practices, and family medical practices in Florida. ER Urgent Care Management Co. Inc., ("Management") is a wholly owned subsidiary of Holdings. On or about November 1, 2006 Holdings bought the family practice of Spuza and Spuza M.D. P.A. for a cash payment of $200,000 paid at closing, $100,000 of stock interest in the Debtor, and a two year promissory note for $300,000. In connection with the purchase, Holdings, Spuza and Spuza, M.D. P.A., and Felicia Spuza (collectively the "Spuza Parties") signed an agreement for sale (the "Sale Agreement"). The Sale Agreement contained an indemnity and hold harmless clause (the "Indemnity Clause"), which provides:

> The representations, warranties, and agreement made by the Seller and Buyer in this Agreement shall survive the closing, regardless of any inquiry that may have been made by Buyer or the Seller. Each party will indemnify and hold harmless from any liability or expenses resulting from a breach of this Agreement by the Company of [sic] the Buyer or the inaccuracy or breach of any representation, warranty or agreement, contained in this Agreement or in any certificate, document, list, schedule, exhibit or instrument delivered to either party by or on behalf of the other party under this Agreement, including reasonable attorney's fees incurred by the party to defend or prosecute any action or proceeding resulting from any breach or inaccuracy. This agreement to indemnify and hold the Seller or buyer harmless shall include any liabilities, claims, costs, demands or losses of any nature incurred by the party.

---

1. The Court originally issued an oral ruling on this matter on December 20, 2011. The Court also entered an Order Granting in Part and Denying in Part Defendant Felicia Spuza's Motion for Attorney Fees and Costs (ECF # 63) on December 23, 2011.

The Debtor and the Spuza Parties also entered into an employment agreement and an addendum non-compete agreement. On July 10, 2007 the Spuza Parties filed a complaint in state court alleging breach of contract with respect to the employment agreement and on July 17, 2007 Holdings brought suit against the Spuza Parties (the "State Court Actions"). On October 21, 2008 Holdings filed a voluntary chapter 11 bankruptcy petition and on October 31, 2008 Management also filed a chapter 11 voluntary petition. The State Court Actions have been stayed pursuant to the Debtors' bankruptcies. On April 28, 2009 this Court converted the Holdings and Management cases from chapter 11 to chapter 7 of the Bankruptcy Code (ECF # 230) and on April 29, 2009 appointed Mr. Goldberg as chapter 7 Trustee. The Holdings and Management bankruptcy cases are jointly administered for procedural purposes.

The Trustee filed the Adversary Complaint (the "Adversary Complaint") against the Spuza Parties (hereinafter the "Defendants") on November 16, 2009 seeking recovery of fraudulent transfers, fraudulent inducement, unjust enrichment, rescission, breach of contract, as well as several other counts based on a variety of theories regarding Holding's purchase of Spuza and Spuza M.D. P.A. (ECF # 1).[2] Several months after filing the complaint the Trustee voluntarily dismissed the case, because, the Trustee argues in his papers, he determined the Defendants were not collectible.

After the Trustee voluntarily dismissed the case the Defendants filed the Motion for Attorney Fees. The Defendants base their request for fees on the Indemnity Clause of the Sale Agreement. The Defendants argue that since the Adversary Complaint "was based upon" the Sale Agreement, and those fees were incurred due to the Trustee's post-petition litigation, the Defendants are entitled to reimbursement of the fees and costs incurred by them in defending against the Trustee's Adversary Complaint. In the Defendant's Memorandum of Law in Support of its Motion for Attorney Fees and Costs, the Defendants also argue that any award of attorney fees and costs should be an administrative claim in the chapter 7 bankruptcy case. The Trustee argues that, to the extent the Defendants are entitled to any fees, which the Trustee disputes, Defendants provide no support for the Court to determine the reasonableness of the fees. The Trustee also argues that even if the Defendants are awarded attorney fees, the award is only entitled to treatment as an unsecured claim because the fees arise from a pre-petition contract.

### Discussion

There is a split of case law regarding the liability of a debtor for post-petition fees related to post-petition litigation arising out of a pre-petition contract. Some courts hold that, because the fees arise from a pre-petition contract, those fees become part of the pre-petition claim, while other courts hold that a debtor may be liable for post-petition litigation fees notwithstanding the existence of the pre-petition contract because the focus is on when the fee obligation actually arises. The Eleventh Circuit has adopted the latter approach, albeit not directly. In *Sure–Snap Corp. v. Vermont*, 983 F.2d 1015 (11th Cir.1993) (*"Sure–Snap"*), the Elev-

---

**2.** In the Adversary Complaint the Trustee also sought disallowance of the Defendants' claims pursuant to 11 U.S.C. § 502(d); turnover, return, and disgorgement of property under 11 U.S.C. § 542; and declaratory judgment pursuant to 11 U.S.C. § 541. The Trustee also objected to the Defendants' claims pursuant to Fed. R. Bankr.P. 3007, Local Rule 3007–1, and 11 U.S.C. § 502(b).

enth Circuit addressed the issue of whether a reorganized debtor is responsible for attorney fees arising from post-confirmation litigation regarding the validity of a mortgage. The lender prevailed on appeal and sought attorney fees under a contractual provision in the mortgage, which the lower court denied based on a finding that the attorney fees arose from a pre-petition contract and were therefore discharged upon confirmation. The Eleventh Circuit reversed the lower court's denial and held that, "[b]y choosing to appeal the validity of the [mortgage] after confirmation, the [debtor] did so at the risk of incurring post-confirmation costs involved in its acts." *Sure–Snap*, 983 F.2d at 1018.[3] *See also Boeing North American, Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1024 (9th Cir.2005) ("[B]y voluntarily continuing to pursue litigation post-petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation.").

■ Accordingly, the Court holds that a debtor can be held liable for attorney fees that arise from post-petition litigation, assuming the debtor would otherwise be liable by contract or applicable law, even if the litigation or the contract arose pre-petition. However, a debtor's liability does not necessarily equate to the estate's liability. Most cases that deal with attorney fees incurred in post-petition litigation arise in the context of dischargeability, which is not an issue in this case because this is a corporate chapter 7 proceeding and there is no discharge. *See e.g. Sure–Snap* 983 F.2d at 1019. Since dischargeability is not at issue in this case, the Court must determine, assuming the estate is liable to the Defendants for attorney fees and costs, whether the Defendants' claim against the estate has administrative claim priority.

The Ninth Circuit in *Ybarra* noted that a debtor's liability for attorney fees does not equate to administrative priority because administrative claims are charged against the bankruptcy estate—"[t]he central question in determining whether a claim is granted administrative expense priority is whether the third party should be paid at the expense of the debtor's existing unsecured creditors." 424 F.3d at 1026. The Ninth Circuit examined the definition of an administrative claim and denied administrative claim status to the attorney fee award.

11 U.S.C. § 507 sets forth the priorities of claims in a bankruptcy case. 11 U.S.C. § 507(a)(2) provides that "administrative expenses allowed under section 503(b) of this title, unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343), and any fees and charges assessed against the estate under chapter 123 of title 28," have second priority.

11 U.S.C. § 503(b)(1)(A) defines administrative claims as "the actual, necessary costs and expenses of preserving the estate." The Eleventh Circuit has held that section 503(b) requires an actual concrete benefit to the estate before a claim is allowed as an administrative expense. *Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta)*, 789 F.2d 1530, 1531 (11th Cir.1986). In addition to the statutory definition of administrative claim, there is what has been called the "Reading" administrative

---

**3.** In its holding, the Eleventh Circuit cites *In re Hadden*, 57 B.R. 187, 190 (Bankr.W.D.Wis. 1986) ("[B]ankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts.").

claim. In *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), the Supreme Court held that innocent third parties who suffered losses from a fire at a plant operating under Chapter XI of the Bankruptcy Act were entitled to assert administrative claims. The Supreme Court in Reading described the statutory objective of bankruptcy as "fairness to all persons having claims against an insolvent." 391 U.S. at 477, 88 S.Ct. 1759.

There has been some debate amongst the circuits whether and to what extent Reading survived the enactment of the Bankruptcy Code in 1978. That issue is settled in the Eleventh Circuit. In *Alabama Surface Mining Commission v. N.P. Mining Company Inc. (In re N.P. Mining Co., Inc.)*, 963 F.2d 1449 (11th Cir.1992) (*"N.P.Mining"*), the Eleventh Circuit held that *Reading* is still good law. Citing to controlling and persuasive authority,[4] the Eleventh Circuit held that even if that which gives rise to an expense does not confer a benefit on the estate, the estate may still be liable for attorney fees, costs, and expenses under one of the following three circumstances: (1) the expenses are to compensate a victim of the estate's tortious conduct; (2) the expenses are for, or related to environmental cleanup; or (3) the charges are civil penalties incurred due to the debtor's failure to comply with state law. *N.P. Mining* 963 F.2d at 1456–58.

While at least one Georgia court, in *Matter of Growth Development Corp.*, 168 B.R. 1009 (Bankr.N.D.Ga.1994) (*"Growth Development"*), sought to expand the *N.P. Mining* list to include attorney fees for what the court perceived as wrongful conduct, as opposed to tortious conduct, this approach has not been expanded since *Growth Development* was decided. In holding that the expenses of a post-petition litigant were not entitled to administrative priority, the district court in *Park National Bank v. University Centre Hotel, Inc. (In re Park National Bank)*, 2007 WL 604936 (N.D.Fla.2007) (*"Park National"*) held that the *Reading* test focuses on fundamental fairness and that in the case before it, fairness did not dictate administrative priority treatment. *Park National Bank* 2007 WL 604936, *5 ("The focus when deciding whether to allow an administrative expense claim is on preventing unjust enrichment of the debtor, and not on compensating a creditor for its loss.").[5]

Judge Haines, in *In re Healthco International, Inc.*, 272 B.R. 510 (1st Cir. BAP 2002) (*"Healthco"*), took a different approach. Judge Haines interpreted 11 U.S.C. § 507(a)(1)[6] to mean that attorney fees and costs for post-petition litigation are recognized as a separate priority. This Court however disagrees with this interpretation. The exact language of section 507(a) upon which Judge Haines' opinion relies is that which gives priority status equal to administrative expenses to

---

**4.** *See e.g. Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (a bankruptcy trustee cannot abandon a debtor's contaminated property in violation of public health and safety state statutes); *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200 (1st Cir.1985)(First Circuit granted administrative claim priority to a civil fine); *In re Bill's Coal Co.*, 124 B.R. 827 (D.Kan.1991) (the debtor's post-petition violations of environmental regulations are administrative claims).

**5.** The *Park National* court did not cite the *N.P. Mining* decision and bases its holding on Reading and cases from other circuits.

**6.** After 2005 this section was renumbered to (a)(2) and modified only to correct an ambiguity consistent with Judge Haines' interpretation in *Healthco*.

"any fees and charges assessed against the estate under Chapter 123 of title 28." Judge Haines held in *Healthco* that this statutory language expressly gave administrative status to attorney fees awarded to a party who successfully defended against a trustee's complaint to set aside a prepetition leveraged buyout as a fraudulent conveyance. Chapter 123 of Title 28 ("Chapter 123") primarily deals with fee assessments by courts against private parties or their counsel in a myriad of situations. For example, when a judgment is affirmed by the Supreme Court or a court of appeals, 28 U.S.C. § 1912 provides for a just award of fees and costs to the party defending against the frivolous appeal, while 28 U.S.C. § 1927 allows courts to assess the costs, expenses, and attorneys' fees reasonably incurred as a result of an attorney or other person "who so multiplies the proceedings in any case unreasonable and vexatiously." However, none of the fee provisions of Chapter 123 applies to the fees and costs sought by the Defendants here.

■ It is against this framework that the Court must review the attorney fee request made by the Defendants in this adversary proceeding. The Trustee sued the Defendants for breach of contract, and therefore, arguably, the Indemnity Clause of the Sale Agreement which provides for attorney fees, was triggered. However, the burden is on the Defendants to provide support for the attorney fee request and the Court finds that Defendants have failed to do so. Defendants are not entitled to an award without first providing proper support for the Court to determine the reasonableness of the attorney fees and costs.

■ Moreover, even if Defendants provide proper support for an award of attorney fees and costs, such an award would be a general unsecured claim and not an administrative claim. The Defendants have not demonstrated that the expenses they incurred constitute an administrative claim under the general statutory test, the *Reading* exception, or the exacting requirements of Chapter 123 of Title 28. The Trustee did not conduct this litigation in any wrongful or inappropriate manner, and certainly did not engage in any tortious behavior against the Defendants.[7] Moreover, assuming this Court embraced the *Park National* fairness test, it would not be fair to other creditors of the estate to bear the burden of Defendants' attorney fees. The issue is not before the Court and so the Court need not and will not address the circumstances under which a trustee, rather than the estate, is liable for attorney fees and costs.[8]

---

**7.** After the Court issued its oral ruling on December 20, 2011, counsel for the Defendants informed the Court for the first time that soon after the Trustee filed this adversary complaint, the Defendants served the Trustee with a letter regarding possible violations of Fed. R. Bankr.P. 9011 (the "Rule 9011 letter"). Since the Court was not timely informed of the Rule 9011 letter nor were evidence, affidavits or even argument provided on this point, this ruling does not take into consideration the impact such a notice and the subsequent dismissal would have had on this ruling.

**8.** Defendants only requested relief against the estate. Relief against a trustee in a personal capacity is governed, among other considerations, by the framework and restrictions set forth in *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881). As noted by the First Circuit in *Woburn Assoc. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 7 (1st Cir. 1992):

> It is by no means clear, nor do we suggest, that the commencement of a groundless lawsuit by the trustee in bankruptcy would warrant allowance of an administrative expense priority to the detriment of holders of unsecured claims. It might be that the more appropriate recourse for the prevail-

### *Conclusion*

To the extent the Defendants are entitled to an award of attorney fees and costs as a general unsecured claim, the Defendants must demonstrate that the request is reasonable. The Defendants have not asked for a specific amount of fees and provided no accounting for the Court's review. At this juncture the Trustee has stated that there will be no distribution to holders of unsecured claims. If the circumstances change so that there is money available for a distribution to unsecured creditors, the Trustee will notify the Defendants through counsel. The Defendants will then have 30 days from the date of such notice to file a proof of claim with sufficient documentation of attorney fees and costs incurred. The Trustee will then have 30 days to object to the reasonableness of those fees and costs, or they will be allowed as claimed.

ing defendant in such circumstances would be against the trustee in bankruptcy, or the trustee's attorney, or by way of an action to surcharge the trustee's bond.