### In re BILL'S COAL COMPANY, INC. and Cherokee Coal Company.

Nos. 88–4116–R, 85–41427 and 85–41428.

United States District Court,
D. Kansas.

Feb. 6, 1991.

John H. Stauffer, Jr., Goodell, Stratton, Edmonds & Palmer, L. Patricia Casey, Jan M. Hamilton, Hamilton, Peterson, Tipton & Keeshan, Topeka, Kan., James M. Lawniczak, Mayer, Brown & Platt, Chicago, Ill., for Bill's Coal Company, Inc. and Cherokee Coal Company.

Edwin H. Steinmann, Jr., Office of the Atty. Gen., Jefferson City, Mo., L. Patricia Casey, Kan. Dept. of Health & Environment, Topeka, Kan., for Missouri Land Reclamation Commission.

Christopher J. Redmond, Redmond, Redmond & Nazar, Wichita, Kan., Trustee.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a bankruptcy appeal. This appeal is brought by the State of Missouri on behalf of the Missouri Land Reclamation Commission of the Missouri Department of Natural Resources. The appeal challenges the decision of the bankruptcy court to deny an application for allowance of an administrative expense. The application requested that $560,580.00 in civil penalties against the debtor be treated as an administrative expense, and thus afforded some priority in payment from the estate. 11 U.S.C. § 507(a). The penalties were assessed for violations of surface mining laws and regulations. A motion for leave to file an amicus brief has been filed by the Kansas Department of Health and Environment. This motion has been opposed by the trustee in bankruptcy. After reviewing the objection, the court shall grant the motion and consider the amicus brief. A request for oral argument has also been made in this case. This request shall be denied. The court does not believe oral argument would be of material assistance in this case.

The motion for allowance of an administrative expense and this appeal have proceeded upon stipulated facts, which are as follows. Debtor, Bill's Coal Company, filed its petition in bankruptcy under chapter 11 on December 10, 1985. Bill's Coal Company ceased active mining operations on that date, and mining operations never resumed. The bankruptcy proceeding was converted to chapter 7 on February 5, 1987. Forty-two enforcement actions were brought against Bill's Coal Company by the Missouri Land Reclamation Commission between the time that the first bankruptcy petition was filed and the date of conver-

sion to chapter 7. The enforcement actions charged violations of Missouri surface coal mining laws and regulations. The violations are not disputed for the purposes of this matter. Penalties in the amount of $560,580.00 were assessed and confirmed on March 26, 1987 and May 28, 1987. Time for appealing the assessments and underlying violations has expired without an appeal being filed or the assessments being paid.

The issue in this case is whether the assessments should be treated as an administrative expense under 11 U.S.C. § 503(b)(1)(A). This section provides generally that administrative expenses are "the actual, necessary costs and expenses of preserving the estate." The bankruptcy court distinguished the assessments in this case from reclamation costs or assessments used to pay cleanup expenses. In this case, it is admitted that the assessments in question are not used as compensation for environmental injuries or for payment of reclamation expenses. The assessments are monetary fines which, after collection, are turned over to local school districts.

The bankruptcy court also distinguished this case from the holding in *United States Department of Interior v. Elliott*, 761 F.2d 168 (4th Cir.1985). The *Elliott* case was governed by the former Bankruptcy Act. In *Elliott*, post-petition penalties were assessed against a mining company by the Department of Interior. The trustee in bankruptcy objected to the government's proof of claim for the penalties on the grounds that § 57(j) of the Bankruptcy Act prohibited such a claim. The Fourth Circuit noted that the Supreme Court had previously determined that claims for post-petition penalties for tax law violations were not barred by § 57(j). The Fourth Circuit held that the same rule should apply for penalties issued against environmental law violators when the violations occur post-petition. In the concluding paragraph of the opinion, the Fourth Circuit stated that the claim would be treated as an administrative expense of preserving the estate under former 11 U.S.C. § 104(a)(1). *Id.* at 172. The statutory section involved in this case, 11 U.S.C.

§ 503(b)(1), derives from that portion of the Bankruptcy Act.

The bankruptcy court found the *Elliott* case to be inapposite because it relied upon a discussion of Section 57(j) of the Bankruptcy Act which "has no counterpart in the Bankruptcy Code." The bankruptcy court did not expressly address the concluding paragraph of the *Elliott* opinion.

The bankruptcy court concluded its order by stating that "the noncompensatory civil penalties were assessed ... for violations for failure of the non-operating debtor to rectify pre-petition violations of the Missouri Land Reclamation Act." The bankruptcy court went on to hold that the penalties would be distributed according to 11 U.S.C. § 726(a)(4). This section subordinates the priority of punitive penalties for *pre-petition* misconduct to other classes of claims.

The court believes the holding of the bankruptcy court should be reversed and that this matter should be remanded for further proceedings. We have two reasons for this holding. First, although the bankruptcy court held that the violations occurred pre-petition, there is no factual basis stated for this finding. The stipulated facts do not clearly distinguish whether the violations were for: pre-petition misconduct; misconduct which started pre-petition and continued post-petition; or misconduct which started post-petition. Nor does the bankruptcy court explain why the violations were pre-petition. That debtor ceased strip mining when it filed for bankruptcy does not force the conclusion that the violations were pre-petition, since obligations to reclaim land or maintain certain land practices could continue regardless of whether debtor was actively strip mining. In sum, the conclusion that the penalties were assessed for pre-petition violations is clearly erroneous. The record does not permit a finding that the violations were for pre-petition misconduct or post-petition misconduct.

The court agrees that penalties assessed for pre-petition misconduct or the continuing effects of pre-petition misconduct should not be considered an administrative expense. See *In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir.1988). But,

if it is found that the penalties were assessed for post-petition misconduct or misconduct which continued into the post-petition period, then the assessments should be treated as an administrative expense. See Hennigan, *Accommodating Regulatory Enforcement and Bankruptcy Protection,* 59 AM.BANKR.L.J. 1 (1985).

The second reason for our holding is that we do not believe the noncompensatory character of the civil penalties prevents their treatment as administrative expenses. Strip mining is a regulated activity. To continue in the business, one must comply with state and federal laws and regulations. This obligation continues past the filing of a bankruptcy petition. The Supreme Court has stated that it did "not question that anyone in possession of the site—whether it is [the debtor] or another . . .—must comply with the environmental laws of the State. . . . Plainly that person may not maintain a nuisance, pollute . . . or refuse to remove the source of such conditions." *Ohio v. Kovacs,* 469 U.S. 274, 285, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985).

Sometimes compliance requires the payment of cleanup costs or fines and penalties. Other courts have stated that the assessment of cleanup costs for post-petition environmental violations is an administrative expense. *In re Smith–Douglas, Inc.,* 856 F.2d 12, 17 (4th Cir.1988); *In re Dant & Russell, Inc.,* 853 F.2d 700, 709 (9th Cir.1988); *In re Wall Tube & Metal Products Co.,* 831 F.2d 118, 123–34 (6th Cir.1987). The payment of fines and civil penalties is also a cost of compliance, or in other words, a cost of doing business. Therefore, it should also be considered an administrative expense. *United States Department of Interior v. Elliott, supra.*

■ We see no persuasive reason to distinguish between compensatory and noncompensatory penalties in an application for allowance of an administrative expense. If a debtor polluted another person's property post-petition, any award of compensatory damages would be treated as an administrative expense under the holding of *Reading Company v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). We think the cost of complying with the law should be considered an administrative ex-

pense even if the cost is noncompensatory. A polluter's motivation for noncompliance with environmental laws does not dictate the nature of the penalty. The deterrence of environmental violations through a noncompensatory fine is no less important than compensating the victims of the violations. Furthermore, the assessment of cleanup costs does not necessarily compensate all the victims of environmental violations or pay for a benefit to the bankruptcy estate which is valuable to the creditors. Nevertheless, as noted previously, such cleanup costs are considered administrative expenses. We do not believe noncompensatory penalties should be treated differently.

■ It has been argued that the estate does not benefit from treating the penalties as an administrative expense and, therefore, the penalties should not qualify as an actual and necessary cost of preserving the estate. But, this consideration is not controlling. Otherwise, the payment of a tort claim which accrued during a bankruptcy would not have been determined to be an administrative expense in *Reading Company v. Brown, supra.* There, the Court suggested that " 'actual and necessary costs' should include costs ordinarily incident to operation of a business." *Id.* at 483, 88 S.Ct. at 1766. As stated before, in the regulated atmosphere of the strip mining industry, a fine for the violation of environmental regulations should be considered a "cost ordinarily incident to operation of a business." This is sufficient for administrative expense status. A connection to some benefit to the estate is not required.

To summarize, the motion for leave to file an amicus brief is granted. After considering all the memoranda on file, for the above-mentioned reasons, the ruling of the bankruptcy court is reversed, and the application for allowance of administrative expense is remanded for further proceedings in accordance with this opinion.

IT IS SO ORDERED.