**CUMBERLAND FARMS,
INC., Appellant,**

v.

**FLORIDA DEPARTMENT OF
ENVIRONMENTAL PRO-
TECTION, Appellee.**

Civil Action No. 96–40137–DPW.

United States District Court,
D. Massachusetts.

Oct. 31, 1996.

Barbara D. Gilmore, Sullivan & Worcester, LLP, Boston, MA, for Cumberland Farms, Inc.

Jonathan H. Alden, Tallahassee, FL, for Florida Dept. of Environmental Protection.

Stephen E. Meunier, Massachussetts Dept. of Revenue, Boston, MA, for Mitchel Adams.

### MEMORANDUM AND ORDER

WOODLOCK, District Judge.

The Florida Department of Environmental Protection (FDEP) applied to the Bankruptcy Court for the District of Massachusetts for imposition of fines against Cumberland Farms, Inc. (Cumberland), a debtor in possession in a Chapter 11 reorganization. The proposed fines against Cumberland were for failure to follow Florida law and regulations in relation to Cumberland's operation of petroleum underground storage tanks (USTs) throughout the state of Florida. The FDEP claimed that Cumberland violated state regulations by failing to file proof of its financial ability to pay for UST facility cleanup and for any potential third party liability related to those facilities. Before me in this appeal are the questions (1) whether the Bankruptcy Court erred in allowing the claim against Cumberland for violating Florida environmental regulations; (2) whether the amount of the fine imposed was appropriate; and (3) whether the Bankruptcy Court erred in granting administrative expense priority status to those fines.

### I.

#### Background

The FDEP is the regulatory agency in the state of Florida in charge of administering certain Florida environmental statutes. Among its duties, the FDEP regulates the operation of USTs used for petroleum and petroleum products.

Cumberland is a corporation which owns and operates convenience stores in Florida. At each of Cumberland's store sites, Cumberland sells gasoline and therefore uses USTs. On May 1, 1992, Cumberland filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

Florida Statute § 376.309 requires that each owner of a UST facility "establish and maintain evidence of financial responsibility." Florida Administrative Code (FAC) Rule 62–761.480 states that an owner shall demonstrate "the ability to pay for facility cleanup and third-party liability resulting from a discharge at the facility" in accordance with the Code of Federal Regulations (CFR), Title 40, Part 280, Subpart H.

The CFR allows for a variety of methods of proving financial responsibility, including obtaining insurance or satisfying the self-insurance test. To satisfy the CFR under the self-insurance test, an owner must file certain documents meeting CFR requirements within 120 days of the end of its fiscal year. Demonstration of financial responsibility also serves as a prerequisite for enrollment in the Florida Petroleum Liability and Restoration Insurance Program (PLIRP) under Florida statute § 376.3072.

Before February 1992, Cumberland had demonstrated satisfaction of the financial responsibility requirements through the self-insurance test. From February 1, 1992 through August 27, 1993, however, Cumberland operated the USTs in Florida without having satisfied the reporting requirements under Florida laws and regulations. Beginning August 27, 1993, Cumberland satisfied the financial responsibility requirements by obtaining insurance for its operation of USTs.

Florida law also incorporates 40 CFR § 280.110(a) into its regulation of USTs. Section 280.110(a) requires that an owner or operator notify the regulating agency within ten days of commencement of a voluntary or involuntary proceeding under Title 11 of the Bankruptcy Code. Cumberland failed to notify the FDEP within ten days of its filing for relief under Chapter 11.

Florida Statute §§ 403.161 and 403.141 provide for the judicial imposition of a civil penalty of up to $10,000 per offense per day of violation for each violation of Florida laws and FDEP regulations.

The FDEP sought to assess penalties against Cumberland for operating UST sites in violation of the law for 483 days during the post-petition period. On September 1, 1993, the FDEP filed an application for Allowance of Administrative Expense Claim seeking to have the Bankruptcy Court impose a $200,-000 civil penalty against Cumberland for operating USTs in violation of Florida law.

On May 23, 1996, Judge Queenan held a hearing on the FDEP's motion for summary judgment on its application for an administrative expense claim. After hearing argument, Judge Queenan granted the FDEP's motion for summary judgment, imposed the requested $200,000 in penalties for failure to comply with state regulation of UST owners and operators, and held that the claim would be given priority as an administrative expense.

## II.

### Standards

On appeal, a district court reviews a bankruptcy court's grant of summary judgment on a *de novo* basis. *In re Varrasso*, 37 F.3d 760 (1st Cir.1994). Federal Rule of Bankruptcy 7056, which governs summary judgment in the Bankruptcy Court, incorporates the standards of Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The materials must be considered in the light most favorable to the non-moving party. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 144 (1st Cir.1994) (citing *Velez–Gomez v. SMA Life Assur. Co.*, 8 F.3d 873, 874–75 (1st Cir.1993)).

Summary judgment is thus inappropriate if "inferences are necessary for the judgment and those inferences are not mandated by the record." *In re Varrasso*, 37 F.3d at 763 (citations omitted). With this standard in mind, I now turn to the merits of the appeal.

## III.

### The FDEP's Authority to Seek a Fine Against Cumberland

Florida Statute § 376.303 gives the FDEP the power and duty to establish rules and regulate USTs in Florida. Under Florida Statute §§ 403.141 and 403.161, it is a violation for any person "to violate or fail to comply with any rule, regulation, order, permit, or certification adopted or issued by the department pursuant to its lawful authority." Fl.Stat. § 403.161. Any person who does so is liable to the state. Fl.Stat. § 403.141. The FDEP is the agency with the authority to request judicial imposition of "a civil penalty for each offense in an amount of not more than $10,000 per offense." *Id.*

The FDEP cites Cumberland's violation of two notification and information requirements with which all UST owners and operators must comply. First, the FDEP asserts and Cumberland admits that Cumberland failed to comply with the financial responsibility requirements for any of its sites from the petition date, May 2, 1992 to August 28, 1993 (483 days). The FDEP sought to assess penalties for violations at each site during the post-petition period. Under the authority of Florida Statute § 403.141 this means that the FDEP could have asked for judicial imposition of a civil penalty of up to 483 days multiplied by approximately 134 sites multiplied by a potential fine of $10,000 per incident for a total of $647,220,000. It sought a fine of $200,000.

In addition, the FDEP also asserts that Cumberland violated 40 CFR § 280.110 which requires an owner or operator of a UST to notify the agency within ten days of commencing a voluntary or involuntary proceeding under Title 11. Cumberland again admits that it failed to comply with this requirement.[1]

---

1. I note that Cumberland devotes a good deal of its appellate argument to the issue of Cumberland's enrollment in the Florida Petroleum Liability and Restoration Insurance Program (PLIRP) during the disputed period. The FDEP, however, brings its claim for penalties under the

■ Based on the statutes in question and the FDEP's authority under Florida law, Judge Queenan held that seeking the penalty was a reasonable exercise of the FDEP's power.[2] After reviewing the law and the record before me, I agree with Judge Queenan on this point. It is clear that the FDEP has been granted broad regulatory authority over UST owners and operators and that the FDEP's power includes the right to request judicial imposition of civil penalties for violations of state law.[3]

## IV.

### The Amount of Penalty

Cumberland also claims that the $200,000 penalty imposed by Judge Queenan is excessive in light of the facts in the case. Florida Statute § 403.141 which gives the FDEP authority to ask for judicial imposition of penalty states that "the court may receive evidence in mitigation" in relation to imposing the fine requested by the FDEP. Cumberland argued before Judge Queenan that the facts that Cumberland and the FDEP acted as though Cumberland was in compliance with the law and that Cumberland, although it failed to file the appropriate information with the state to demonstrate its financial responsibility, actually did satisfy the financial requirements, constituted mitigation.

■ It is settled that in highly regulated areas such as environmental controls responsible parties must comply with the laws of the state, even if in bankruptcy. *In re Virginia Builders, Inc.*, 153 B.R. 729, 735 (Bankr. E.D.Va.1993) (citing *Ohio v. Kovacs*, 469 U.S. 274, 285, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985)). In interpreting 28 U.S.C. § 959(b) which states that "a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated" courts have held that debtors in possession are not to have carte blanche to ignore non-bankruptcy law. *Id.* (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 505, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986)).

Cumberland's failure to demonstrate its financial responsibility through required filings before operating over 100 UST sites was a flagrant and sustained violation of the reporting requirements of state environmental law. Cumberland's bankruptcy petition did not give it permission to fail to provide the FDEP with the information it needed to regulate USTs in Florida. While Cumberland states now that it was financially responsible during the disputed period, it has

basic financial responsibility requirements, not under PLIRP. Since violation of PLIRP results only in exclusion from the insurance scheme, not in potential regulatory penalties, the bankruptcy court is not the forum for Cumberland to protest its eligibility for PLIRP coverage. Other justifiable grounds exist for the FDEP's action, and Judge Queenan made no findings with regard to Cumberland's eligibility under PLIRP and nothing concerning the PLIRP is directly implicated in this appeal. Consequently, I will not address Cumberland's concerns on this issue further.

2. During the hearing, Cumberland conceded that the Bankruptcy Court could have jurisdiction to assess a penalty under the Florida statutes mentioned. Cumberland's complaint on this point is instead that the FDEP had not "really asked [the bankruptcy court] to assess a penalty." The FDEP in its summary judgment brief, however, did specifically state the statute under which it was seeking the imposition of a penalty against Cumberland, (Brief in Support of Motion for Summary Judgment on Application for Administrative Expense Claim, at 5), and it reiterated this request during the hearing. While its Applica-

tion may not have been as clear as it could have been on this issue, given that the FDEP cited the correct source of its power, that the bankruptcy court was the correct forum in which to make its claim and that Judge Queenan acted within his powers in assessing a penalty on Cumberland for violating Florida law, I find that Cumberland's objection on this ground has no merit.

3. Viewing the facts in the light most favorable to Cumberland, it is clear that Cumberland violated Florida law and regulations regarding UST owners and operators. Cumberland admits that it did not file the required affidavit assuring financial responsibility. Cumberland argues, however, that despite this failure to file it met the substance of the financial responsibility requirements. Even assuming this to be true, Cumberland still violated the law by failing to submit the required documentation. Given this failure to file, Cumberland violated the laws and regulations and the FDEP had the authority to act upon this violation.

never demonstrated that responsibility by filings consistent with the terms of the regulations. Uniform reporting ensures public safety and UST owner responsibility and permits orderly policing of financial responsibility. Cumberland, by disregarding reporting requirements, was plainly liable for large penalties under Florida law. If *post hoc* and particularized demonstrations of financial responsibility were permitted fully to mitigate violations of reporting requirements, the vitality of reporting requirements would be eviscerated.

Given the enormous fine which the FDEP could have sought from Cumberland, it is evident that both the FDEP and Judge Queenan took into consideration mitigating factors in deciding upon an award of $200,000. The FDEP provided a reasonable rationale for asking for this amount. I decline to displace Judge Queenan's ruling that the mitigating factors Cumberland presented did not warrant further reduction by the court in assessing a penalty. Although Cumberland states that it met financial requirements, I note that at no time has Cumberland actually produced the documents required under the Florida and federal regulations.[4] Operating the USTs in such circumstances is enough to constitute a clear violation of the law.

█ It is clear that Cumberland violated Florida laws and regulations by operating USTs without satisfying basic financial responsibility reporting requirements. Given that violation, the FDEP was well within its powers to ask the bankruptcy court to impose civil fines in the amount of $200,000 against Cumberland and Judge Queenan was correct in determining that the violations of law justified such sanctions against Cumberland for those violations.

## V.

### *Administrative Expense Status*

Under 11 U.S.C. § 503(b), a bankruptcy court may allow certain expenses to be classified as administrative expenses, including:

(1) (A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

Granting of administrative expense status gives such an expense priority over other claims. The First Circuit has stated that "[t]he traditional presumption favoring ratable distribution among all holders of unsecured claims counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses." *In re Hemingway Trans., Inc.*, 954 F.2d 1, 4–5 (1st Cir.1992) (citations omitted). Despite this policy of strict application of the administrative expense priority, however, courts have been willing to recognize certain special categories of expenses which are entitled to administrative priority status based on considerations of fundamental fairness. *See Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968); *Hemingway Transport*, 954 F.2d 1; *In re Charlesbank Laundry, Inc.*, 755 F.2d 200 (1st Cir.1985); *In re Mammoth Mart*, 536 F.2d 950 (1st Cir.1976).

As the court in *In re N.P. Mining, Co., Inc.*, 963 F.2d 1449, 1460 (11th Cir.1992), stated, analysis under "[s]ection 503(b) begins with the premise that all of the costs to be considered are postpetition and some of them will receive administrative-expense priority." The FDEP states that Cumberland operated its USTs in violation of state law from February 1, 1992 through August 27, 1993 because it owned and operated USTs without satisfying the requisite financial responsibility requirements. The FDEP in its claim for administrative expenses, however, refers only to the operation in violation of Florida law which occurred after Cumberland filed its Chapter 11 petition in May 1992 as foundation for its claim. Since the FDEP only refers to post-petition violations with regard to Cumberland's operation in violation

---

**4.** The best that Cumberland could produce was an affidavit from its Chief Financial Officer to the court, in a form which in no way resembles that required under the CFR, stating that at all times during the period in question Cumberland had a tangible net worth of over $10 million. The CFR incorporated by the Florida legislature requires much more than this. The $10 million net worth requirement is but one element of the financial responsibility test. In addition, the CFR requires that an affidavit with very specific wording to demonstrate financial responsibility be provided yearly. Cumberland has never produced such a document for the period in question.

of Florida statutes in its claim, I assess Judge Queenan's determination that the fines imposed are administrative expenses as post-petition civil fines or penalties.[5]

An understanding of the authority to classify fines as administrative expenses can be developed by a review of the case law in the area.

In *Reading*, a receiver negligently administered an estate which resulted in a building fire which destroyed the debtor's most significant asset and spread to and destroyed adjoining properties. 391 U.S. at 473, 88 S.Ct. at 1761. The petitioners were owners of the adjacent properties which had been damaged or destroyed and claimed that their damages were administrative expenses. The Supreme Court held that the phrase " 'actual and necessary costs' should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible." *Id.* at 483, 88 S.Ct. at 1766.

Based on a principle of fairness to interested parties and case law which had established that " 'actual and necessary costs' are not limited to those claims which the business must be able to pay in full if it is to be able to deal at all," the Court held that "costs that form 'an integral and essential element of the continuation of the business' are necessary expenses even though priority is not necessary to the continuation of the business." *Id.* at 484, 88 S.Ct. at 1766 (citations omitted). The property owner damages were thus entitled to administrative status.

The First Circuit has used the rationale of the Supreme Court in *Reading* to expand the scope of the term "actual and necessary costs." In *Mammoth Mart*, 536 F.2d at 953, the First Circuit, although recognizing that the fundamental purpose of Chapter 11 is the "rehabilitation of the debtor's business," recognized a category of administrative expense priority status for claims due to persons "injured by the debtor-in-possession's operation of the business even though their claims did

not arise from transactions that were necessary to preserve or rehabilitate the estate." *Id.* at 954. The First Circuit further stated that "[p]reservation of the estate includes protection of the assets of the estate, as well as postpetition operation of the business of the debtor." *Id.* The First Circuit in *Mammoth Mart* established a two-prong test to determine whether a claim qualifies for administrative expense status. A court should grant administrative expense status if

(1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and

(2) the consideration supporting the right to payment was beneficial to the estate of the debtor.

*Id.* at 954.

After *Mammoth Mart*, the First Circuit recognized that a civil compensatory fine for violation of an injunction by a debtor corporation qualifies for administrative expense priority as "actual, necessary costs and expenses of preserving the estate" regardless of whether the "benefit to the estate" prong of the *Mammoth Mart* test was fully satisfied. *Charlesbank Laundry*, 755 F.2d at 201–02. The laundry debtor was fined for violating a preliminary injunction by continuing to commit a private and public nuisance. The claimants then sought to have a portion of that fine designated an administrative expense. The bankruptcy court denied this request, stating that "there was 'no benefit to the estate' or contribution to the creditors' resulting from the 'adversarial' efforts of plaintiffs." *Id.* at 201 (quoting bankruptcy court decision). The district court affirmed the bankruptcy court decision, distinguishing the *Reading* situation from one involving a civil penalty. The First Circuit, however, stated that this situation "falls within the clearly enunciated rationale of *Reading Co. v. Brown*" in light of the basic objective of " 'fairness to all persons having claims

---

**5.** The fines proposed by the FDEP are not penalties assessed post-petition for the failure to abate a pre-petition violation of a statute, which under *N.P. Mining* would not be an administrative expense. Here, the FDEP sought to fine Cumberland for its operation of UST facilities post-petition while in violation of state laws and regulations, not for operating these facilities pre-petition in violation of the statute, which it appears that Cumberland has also done. I do not find that the FDEP has asked the court to impose a fine for pre-petition violations but rather only for so much of a continuing violation as extended into the post-petition period.

against an insolvent.' " *Id.* at 202 (quoting *Reading,* 391 U.S. at 477, 88 S.Ct. at 1763). Stating that the rationale for priority status of the claim was even stronger than in *Reading* because the "debtor in this case deliberately continued a violation of law month after month presumably because it was more lucrative for the business to operate outside the zoning ordinance than within it. If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, a fortiori, an intentional act which violates the law and damages others should be so treated." *Id.* at 203 (citations omitted).

Although the First Circuit has applied the fairness rationale of *Reading* in such a way as to invoke a broader reading of the term "actual, necessary costs and expenses of preserving the estate," which has resulted in a variety of claims being accorded administrative expense status, it has not as yet precisely addressed a claim for priority for a punitive fine under a statutory scheme such as that enacted by Florida. The First Circuit's fairly expansive approach to administrative expense status claims, however, all but dictates the treatment of the fine claims here as administrative expenses. Such treatment has been accorded by courts in other circuits.

Judge Rogers in the United States District Court, District of Kansas, faced a situation similar to the one presented here in *In re Bill's Coal Co., Inc.,* 124 B.R. 827 (D.Kan. 1991). There, the State of Missouri on behalf of the Missouri Land Reclamation Commission of the Missouri Department of Natural Resources brought a claim to have civil penalties against the debtor treated as an administrative expense. Judge Rogers remanded the case for further proceedings because the facts did not clearly indicate whether the fines were for pre-petition misconduct, post-petition misconduct or misconduct which began pre-petition and continued post-petition. To guide the bankruptcy court, however, he directed that "penalties assessed for pre-petition misconduct or the continuing effects of pre-petition misconduct should not be considered an administrative expense. But, if it is found that the penalties were assessed for post-petition misconduct or misconduct which continued into the post-petition period, then the assessments should be treated as an administrative expense." 124 B.R. at 829–30 (citations omitted). Judge Rogers concluded that the non-compensatory nature of the fine did not prevent administrative expense status, given the highly regulated nature of the strip mining industry which required a debtor to comply with state and federal laws and regulations in order to continue in the business. Thus the payment of civil fines and penalties was a "cost of doing business" and therefore eligible for administrative expense status. *Id.* at 830.

The Eleventh Circuit has been the only Court of Appeals research has found to address the issue of the status of civil fines as administrative expenses under § 503(b) of the current Bankruptcy Code.[6] *See N.P. Mining,* 963 F.2d 1449. In holding that punitive, civil penalties qualify as administrative expenses, the Eleventh Circuit based its decision on the federal policy embodied in 28 U.S.C. § 959(b). *Id.* at 1453. Section 959(b) directs that "a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated." The court limited the scope of its decision to fines incurred as a consequence of post-petition "operating" of the business. *Id.* Incorporating the fairness principle of *Reading,* the Eleventh Circuit concluded that "it makes sense that when a trustee or debtor in possession operates a bankruptcy estate, compliance with state law should be considered an administrative expense. Otherwise, the bankruptcy estate would have an unfair advantage over nonbankrupt competitors." *Id.* at 1458.[7]

---

6. The Fourth Circuit in *United States Department of Interior v. Elliott,* 761 F.2d 168 (4th Cir.1985), held that post-petition environmental penalty claims were administrative expenses, but based its reasoning on a since-repealed section of the former Bankruptcy Act, § 57(j).

7. The Eleventh Circuit also noted, as did the court in *Bill's Coal,* that penalties assessed for a failure to abate a prepetition violation of a statute would not be granted administrative expense status. *Id.* at 1459.

As in *N.P. Mining* and *Bill's Coal*, Cumberland here has clearly violated state environmental laws and regulations. Cumberland operated numerous UST sites while in violation of the law for an extended period. In this respect, it has incurred expenses related to its operation of its UST sites. In a regulated atmosphere, "a fine for violation of environmental regulations should be considered 'a cost ordinarily incident to operation of a business.'" *N.P. Mining*, 963 F.2d at 1458 (citing *Bill's Coal*, 124 B.R. at 830). Although the penalties are not compensatory, as in the circumstances the First Circuit has to date confronted, I conclude that the Eleventh Circuit's rationale that when a "debtor in possession operates a bankruptcy estate, compliance with state law should be considered an administrative expense," *id.*, is one which the First Circuit would embrace.

This analysis is also in accord with the First Circuit's recognition in *Mammoth Mart* that a fundamental purpose of Chapter 11 is the rehabilitation of the debtor's business. If a debtor in possession fails to comply with state regulations it places itself at risk of being penalized by a state regulatory agency. This potentially harms the business as a whole. Paying the fines here allows Cumberland to continue to operate its business without the threat of further action by the FDEP, thereby preserving it for potential emergence from Chapter 11 protection and repayment of other creditors, ultimately benefitting the estate of the debtor overall.

I agree with Judge Queenan that there is a strong analogy between this case and *Reading* and *Charlesbank Laundry*. The principle of fairness which the Supreme Court and the First Circuit relied upon in *Reading* and *Charlesbank Laundry* should apply equally in this situation so that a debtor in possession not be given an unfair advantage over other UST operators by being able to disregard laws which provide for public protection against petroleum spillage.

As in *Charlesbank Laundry*, Cumberland "*deliberately* continued a violation of law month after month presumably because it was more lucrative for the business to operate outside the [law] than within it." 755 F.2d at 203 (emphasis in original). Fairness in that case dictated that "an intentional act which violates the law and damages others"

should be paid ahead of pre-reorganization claims. That same principle of fairness applies here. Although the "damage" to others is less precisely presented in this case, the financial responsibility and reporting regulations under the Florida environmental laws were part of a comprehensive scheme designed to protect the public from having to pay the clean-up costs for petroleum spills. While in this case the public was not injured, the direct claimant, the FDEP, was impaired in its ability to carry out its review function under the law and Cumberland's violation of the law raised the prospect of substantial financial risks for potential claimants, as well as the state of Florida. Fairness dictates that fines associated with intentional acts which violate the law and pose risks of harm to others should be paid ahead of other claims because they relate to the ordinary operation of business and they are in every way "actual and necessary" for the debtor to conduct business and for claimants to protect their interests.

## VI.

For the reasons set forth more fully above, the decision of the Bankruptcy Court is AFFIRMED.