In re **TORWICO ELECTRONICS, INC., Debtor.**

**TORWICO ELECTRONICS, INC., Appellant,**

v.

**STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION.**

No. 93–5021.

United States Court of Appeals, Third Circuit.

Argued Aug. 3, 1993.

Decided Oct. 25, 1993.

Robert J. Del Tufo, Atty. Gen., Joseph L. Yannotti, Asst. Atty. Gen., Rachel Jeanne Lehr (argued), Deputy Atty. Gen., Trenton, NJ, for appellee.

Timothy P. Neumann (argued), David E. Shaver, Wood, Broege, Newmann & Fischer, Manasquan, NJ, for appellant.

Before: STAPLETON, HUTCHINSON and ROTH, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

This case involves an attempt by the State of New Jersey to force Torwico Electronics, a debtor in chapter 11 bankruptcy, to comply with its obligations under state and federal environmental laws. Torwico asserts that these obligations are "claims," within the meaning of 11 U.S.C. § 101(5), and that, because the state failed to timely file a proof of claim, it is no longer responsible for them. The state claims that what is involved here are regulatory obligations, not bankruptcy claims. The bankruptcy court decided the issue in Torwico's favor, but was reversed by the district court. We conclude that the district court adopted the correct approach to this issue and will affirm.

### I.

Torwico Electronics conducted a manufacturing business from a location in Ocean County, New Jersey until September 1985 when it moved to a new location. The Ocean County site ("the property") was owned by George Allen Associates and was leased to Torwico during the time Torwico did business at that address.

On August 4, 1989, Torwico filed for chapter 11 bankruptcy and listed the New Jersey Department of Environmental Protection and Energy (NJDEPE) on its schedules as a creditor with a disputed and unliquidated claim. On October 4, 1989, the bankruptcy court sent notice to all creditors, including NJDEPE, of Torwico's Chapter 11 bankruptcy and informed them that the last day to file a proof of claim was January 2, 1990. The following month, on November 13, 1989, NJDEPE performed an on-site inspection of the property and found a hidden illegal seepage pit containing hazardous wastes—wastes which were allegedly migrating into local waters. NJDEPE also found that Torwico was operating at its new site without the identification number required by EPA. NJDEPE immediately issued three notices of violation to Torwico, one concerning the failure to obtain a new identification number at the new place of business, and the others concerning the hazardous wastes found at the property. Torwico claims no knowledge of the seepage pit and the wastes found there.

The January 2, 1990 deadline for filing a proof of claim passed without any filing by NJDEPE. While Torwico did obtain an ID number for its new place of business, it did nothing about the seepage pit at the property. On April 9, 1990, NJDEPE issued an Administrative Order and Notice of Civil Administrative Penalty Assessment to Torwico relating to the violation noted in November 1989. The Order required Torwico to submit a written closure plan for the seepage pit and

assessed a $22,500 penalty for failure to take action following the November notice. The Order also stated: "No obligations imposed [by this order] ... are intended to constitute a debt, damage claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding. All obligations are imposed pursuant to the police powers of the State of New Jersey, intended to protect the public health, safety, welfare, and environment."

Torwico and NJDEPE filed cross-motions for summary judgment before the bankruptcy court, with Torwico seeking to avoid its obligations to the state by claiming that they were claims barred by the absence of a filing prior to the bar date. The court agreed with Torwico and released the company from its obligations because NJDEPE had failed to timely file a proof of claim. On appeal, the district court reversed, 153 B.R. 24. Torwico then filed this appeal.[1]

## II.

### A.

Because debts are dischargeable in Chapter 11, critical to the resolution of this case is whether Torwico's obligations constitute a "debt" under the bankruptcy code. A "debt" is defined as a "liability on a claim." 11 U.S.C. § 101(12) (1988). A "claim," in turn, is defined in part as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5) (1988). Torwico contends that this broad definition clearly encompasses its obligations to the state under the administrative order and the state statute pursuant to which it was issued. NJDEPE, on the other hand, contends that it has no "right to payment"; rather, it has only the right to enforce laws requiring Torwico to clean up the hazardous wastes it is responsible for under state law.

Both sides agree that a proper interpretation of the Supreme Court decision in *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) is instrumental in resolving this case. In *Kovacs*, the state of Ohio obtained an injunction against Kovacs requiring him, *inter alia*, to clean up hazardous wastes on his property. When Kovacs failed to comply, the state obtained a court order appointing a receiver for the property. The receiver was directed to take possession of the property, as well as other assets, and complete the cleanup. After the receiver was appointed, but before he completed the cleanup, Kovacs filed for personal bankruptcy. The state, seeking to obtain some of Kovacs' post-bankruptcy income for use in paying for the cleanup, argued that Kovacs' obligation to clean up the property under the state's environmental laws was not a "debt" (or, in other words, that the state had no "claim") and was not dischargeable. The Supreme Court disagreed.

After looking at the definition of "claim" and the legislative history, the Court concluded that the state had a "right to payment" and thus possessed a "claim." It noted that Kovacs no longer had possession of the site nor control over the cleanup; all the state sought from Kovacs was money to fund the cleanup. In essence, the Court found that Kovacs' obligation had been reduced to a monetary claim. In reaching its decision, the Court noted a number of issues it was not deciding:

We do not address what the legal consequences would have been had Kovacs tak-

---

1. A final order reversing the decision of the bankruptcy court was issued by the district court on December 14, 1992. We therefore have jurisdiction under 28 U.S.C. § 1291. The district court properly exercised jurisdiction over this case pursuant to 28 U.S.C. § 158(a), and the bankruptcy court had jurisdiction over this chapter 11 bankruptcy pursuant to 28 U.S.C. § 157.

Because the issues raised here are questions of law, and because the district court's decision was made in a summary judgment context, our review is plenary.

en bankruptcy before a receiver had been appointed and a trustee had been designated with the usual duties of a bankruptcy trustee.... [W]e do not hold that the injunction against bringing further toxic wastes on the premises or against any conduct that will contribute to the pollution of the site or the State's waters is dischargeable in bankruptcy; we here address ... only the affirmative duty to clean up the site and the duty to pay money to that end.... [W]e do not question that anyone in possession of the site ... must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State or refuse to remove the source of such conditions.

*Id.* at 284–85, 105 S.Ct. at 710–11.

Torwico contends that *Kovacs* applies here: Torwico's "affirmative duty to clean up the site and the duty to pay money to that end" is a claim. In addition, Torwico is no longer in possession of the site and thus, the Court's admonition that parties in possession "must comply with the environmental laws of the State" and cannot "refuse to remove" hazardous wastes does not apply to it. NJDEPE contends that *Kovacs* is inapplicable here because it does not seek a monetary judgment, but rather seeks to remedy ongoing pollution by forcing Torwico to clean up the site.

#### B.

Considerable insight into the issue presented here may be gleaned from two recent appellate cases that have dealt with similar questions. In *In re CMC Heartland Partners*, 966 F.2d 1143 (7th Cir.1992), the debtor owned a hazardous waste site and went through bankruptcy under the Bankruptcy Act of 1898. Subsequently, EPA issued an order pursuant to CERCLA § 106, 42 U.S.C. § 9606, to the debtor, who still owned the site, requiring removal and remediation activity. The Seventh Circuit Court of Appeals held that the order, which was based on ownership of the land, survived reorganization. The court noted that "[t]o the extent [the relevant federal statutory sections] re-

quire a person to pay money today because of acts before or during the reorganization proceedings, CERCLA creates a 'claim' in bankruptcy." *Id.* at 1146. However, by authorizing cleanup orders to current owners, CERCLA § 106 creates a claim "running with the land," and a "statutory obligation attached to current ownership of the land survives bankruptcy." *Id.* at 1147. Thus, the court found in favor of EPA, but warned that EPA must show under § 106 that the releases were "threatened or ongoing"; otherwise, one might conclude that EPA merely "repackage[d] a forfeited claim for damages." *Id.*

In *In re Chateaugay*, 944 F.2d 997 (2d Cir.1991), the court faced the issue of what constituted a claim in the context of the bankruptcy of LTV, an entity that owned and operated literally dozens of hazardous waste sites. The Second Circuit held that the EPA's costs of responding to a release of hazardous waste, even if not yet incurred at the time of bankruptcy, involved claims; thus, EPA was forced to file a proof of claim with respect to these costs and stand in line with the other creditors. As to injunctions requiring the debtor to clean up a waste site, the court made the following distinction:

EPA is entitled to seek payment if it elects to incur cleanup costs itself, but it has no authority to accept a payment from a responsible party as an alternative to continued pollution. Thus, a cleanup order that accomplishes the dual objectives of removing accumulated wastes and stopping or ameliorating ongoing pollution emanating from such wastes is not a dischargeable claim. It is true that, if in lieu of such an order, EPA had undertaken the removal itself and sued for the response costs, its action would have both removed the accumulated waste and prevented continued pollution. But it is only the first attribute of the order that can be said to remedy a breach that gives rise to a right to payment. Since there is no option to accept payment in lieu of continued pollution, any order that to any extent ends or ameliorates continued pollution is not an order for breach of an obligation that gives rise to a right of payment and is for that

reason not a 'claim.' But an order to clean up a site, to the extent that it imposes obligations distinct from any obligation to stop or ameliorate ongoing pollution, is a 'claim' if the creditor obtaining the order had the option, which CERCLA confers, to do the cleanup work itself and sue for response costs, thereby converting the injunction into a monetary obligation.

*Id.* at 1008.[2]

## C.

■ We find *CMC* and *Chateaugay* to be both persuasive and consistent.[3] Applying the precepts outlined in those cases to the situation here present leads us to conclude that Torwico's obligations under the administrative order do not constitute a claim.

As *Kovacs* noted, a debtor cannot maintain an ongoing nuisance in direct violation of state environmental laws. The state can exercise its regulatory powers and force compliance with its laws, even if the debtor must expend money to comply. Under *Kovacs*, what the state cannot do is force the debtor to pay money to the state; at that point, the state is no longer acting in its role as regulator, it is acting as a creditor.[4]

Here it is clear that the state demanded not that Torwico pay money over to the state, but rather that it take action to ameliorate ongoing hazard.[5] This is not the end of the inquiry, however. As noted in *Kovacs*, even if an injunction does not facially require

payment of money, it still may present a "claim." 469 U.S. at 274; 105 S.Ct. at 705. *Chateaugay* and *CMC* also both suggest that, at least in some circumstances, an injunction that requires a cleanup may still be considered a "claim." *CMC* held that the CERCLA § 106 order there involved must be in response to an ongoing and continuing threat, and not merely the repackaging of a forfeited claim for damages. 966 F.2d at 1146–47. *Chateaugay* states that where an order imposes "obligations distinct from any obligation to stop or ameliorate ongoing pollution," the order presents a claim if the government could have done the work itself and then sought reimbursement; under such circumstances there is a "breach of an obligation that gives rise to a right of payment." 944 F.2d at 1008.

■ The state here found that the seepage pit was a continuing problem that was leaking hazardous material into the surrounding environment. Thus, the state is not asserting a "repackaged claim for damages"; rather, there is an ongoing and continuing threat and, in the words of *Chateaugay*, an obligation on the part of the debtor "to ameliorat[e] ongoing pollution emanating from [accumulated] wastes." *Chateaugay*, 944 F.2d at 1008. The state has no "right to payment" here. What it has is a right to force the debtor to comply with applicable environmental laws by remedying an existing hazard.

---

2. The parties here also devote considerable attention to our decision in *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267 (3d Cir. 1984). In this pre-*Kovacs* case, the court examined whether attempts by the state to enforce a pre-bankruptcy injunction requiring Penn Terra to undertake certain cleanup actions was barred by the automatic stay provisions of § 362. The court concluded that because the injunction was an exercise of state regulatory power and was not an action for a "money judgment," the state could enforce the injunction. Because this case involved the automatic stay provision of the Bankruptcy Code and the court expressly declined to discuss whether the injunction constituted a "claim" or "debt," *see id.* at 277 n. 11, this case is of only marginal relevance in deciding the issue currently before us.

3. We note that neither NJDEPE nor Torwico appears to challenge the correctness of *CMC* or

*Chateaugay* but rather, they dispute the proper application of those decisions to the current situation.

4. Were we to adopt the bankruptcy court's position that any order requiring the debtor to expend money creates a dischargeable claim, it is unlikely that the state could effectively enforce its laws: virtually all enforcement actions impose some cost on the violator.

5. The Order requires Torwico to submit "a written closure plan … for closure of the seepage pit." App. at 210. An affidavit from an employee of NJDEPE discusses in detail the findings of contamination and the fact that wastes are migrating into the surrounding environment. *See* App. at 219–31 ("It is safe to assume, at the concentrations detected at the property boundary, that the contamination has migrated offsite.").

The single fact which Torwico relies on most heavily is that it is no longer in possession of the site, and has not been in possession for several years. Thus, Torwico argues that it is not maintaining a nuisance or participating in an ongoing release of hazardous substances into the environment. It notes that a prime factor in *Kovacs* was that the debtor was no longer in possession of the property and that a receiver was in possession and was conducting the cleanup. Similarly, unlike the debtor in *Chateaugay*, Torwico is not, in its view, "continuing to pollute" here. Finally, Torwico notes that *CMC* found a "statutory obligation running with the land"; Torwico no longer owns or occupies the land here.

We do not find Torwico's suggested distinction persuasive. Unlike the debtor in *Kovacs*, Torwico can (and in the state's view, must) conduct the cleanup: it has access to the site and the state has not, apparently, performed any cleanup on its own. Under New Jersey law, Torwico is a generator of hazardous waste and as such has an ongoing responsibility for the wastes it disposes. Even though Torwico no longer possesses the property, it is still, allegedly, Torwico's wastes that are presenting a continuing environmental hazard. Under New Jersey law, Torwico is accordingly still responsible for the nuisance and cannot avoid compliance with the environmental laws. *Kovacs, CMC,* and *Chateaugay* all suggest that Torwico must remedy the situation; the obligations under the Order are not a "claim."[6]

### D.

 Unlike *Kovacs*, the state in this case neither seeks money nor has a right to payment under the statutory authority asserted or the Order imposed; the state seeks compliance with its laws through a cleanup of a current hazardous situation. In the words of *Chateaugay*, "there is no option to accept payment in lieu of continued pollution," and there is an order intended to "ameliorat[e] continued pollution"; thus, the Order "is not an order for breach of an obligation that gives rise to a right of payment and is for that reason not a 'claim.'" 944 F.2d at 1008. Under the circumstances here present, Torwico's obligations do not run with the land as did the debtor's in *CMC*; however, they run with the waste. To the extent that Torwico's waste poses a continuing hazard, Torwico is responsible for remedying the problem regardless of where the waste might be.[7] As in *CMC*, the release here is "threatened and ongoing"; as in *CMC*, this is not a "repackaging [of] a forfeited claim for damages" (966 F.2d at 1147) for past conduct, but rather an attempt to prevent additional future damage.

### III.

In conclusion, we hold that the state's attempt in this case to force a party to clean up a waste site which poses an ongoing hazard is not a "claim" as defined by the Bankruptcy Code. This is not a situation where the state is attempting to get money from the debtor but rather, it is an exercise of the state's inherent regulatory and police powers. We will therefore affirm the district court.

[6] The parties dispute whether if the state has an "alternate payment remedy" the order becomes a "claim." Here, it is undisputed that the order was issued under statutory sections which do not allow the state to perform the cleanup and then sue for reimbursement of its costs. That authority may exist under other potentially relevant statutes for the state to perform the cleanup and seek reimbursement for its costs is irrelevant—much as it was irrelevant in *CMC* and *Chateaugay*. The *Chateaugay* court noted that "to the extent that [an order] imposes obligations distinct from any obligation to stop or ameliorate ongoing pollution, [it] is a 'claim' if the creditor obtaining the order had the option ... to do the cleanup work itself and sue for response costs."

*Chateaugay*, 944 F.2d at 1008. Here, Torwico's obligation was an obligation to ameliorate ongoing pollution; it had no option to pay for the right to allow its wastes to continue to seep into the environment. That the state may have had alternative means at its disposal to end the ongoing threat does not convert its statutory authority into a "right to payment."

[7] *CMC* held that a "statutory obligation attached to current ownership of the land survives bankruptcy." 966 F.2d at 1147. Similarly, a statutory obligation attached to hazardous waste (i.e. to make sure it does no damage) also survives bankruptcy.