**In re·COAL STRIPPING, INC., Debtor.**

**CLARENDON NATIONAL INSURANCE COMPANY and Van–American Insurance Company, Movants,**

v.

**COAL STRIPPING, INC., Respondent.**

**Bankruptcy No. 96–26197 JKF.
Motion No. AGM–1**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 10, 1997.

---

7. FMF totaled its 1996 prejudgment interest as $16,507.20.

F. Scott Gray, Pittsburgh, PA, for Debtor.

Alan G. McGonigal, Wheeling, WV, for Van–American Insurance Company and Clarendon National Insurance Company.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

■ The matter before the court is the Motion for Payment of Administrative Expense filed on behalf of Van–American Insurance Company and Clarendon National Insurance Company. Van–American seeks administrative expense status of its claim for annual premiums for reclamation bonds.[2] The premium obligation exists by virtue of an Annual Premium Agreement between Debtor and Van–American. *See* Memorandum in Support of Motion for Payment of Administrative Expense (hereafter "Movants' Brief") at Exhibit C. Van–American is the underwriter and Clarendon is named as the surety in the Reclamation Surety Bonds. Movants' Brief at Exhibits A, B.[3] The matter was submitted to the court on briefs, the

1. This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

2. In its brief, but not the motion, Van–American argues that it is entitled to administrative expense priority for an amount up to $82,000 which it had to pay to the State of West Virginia in reclamation costs. The motion does not request payment for reclamation costs, only for unpaid premiums. Van–American must file an appropriate pleading in order to bring its reclamation cost claim properly before the court. Accordingly we will address only the status of the unpaid premiums.

3. The caption of the motion refers to both companies but the motion is signed "Van American Insurance Company by Alan G. McGonigal, Of Counsel". Letters from counsel to the Clerk of the Bankruptcy Court dated August 29, 1997, and September 11, 1997, state that he represents both companies. From the record before us,

issue having been raised at the plan confirmation hearing held on August 29, 1997.

Debtor was engaged in coal mining in West Virginia. West Virginia law requires that mining operators post a bond to secure reclamation obligations. On April 28, 1993, Clarendon, as surety, issued reclamation surety bonds, one in the face amount of $67,000 to cover Debtor's surface mining operations on 66.74 acres of land in Monongalia County, West Virginia, and another in the face amount of $38,000 to cover Debtor's operations on 37.45 acres of land in the same county. Movants' Brief at Exhibits A, B. In conjunction with the issuance of the surety bonds, Debtor and Van–American executed an Annual Premium Agreement by which Debtor agreed, *inter alia*, to pay Van–American a two percent annual premium on the anniversary of each bond until each was released. Movants' Brief at Exhibit C.

This case was filed on November 19, 1996. In their brief, movants state that Debtor failed to pay the premiums on the two bonds for the 1996 and 1997 premium years (which commenced April 28 of each year). The motion seeks payment only for the 1997 premium which was invoiced to Debtor on or about April 5, 1997, for the one-year period commencing April 28, 1997. Thus, we address only the 1997 premium.[4] The 1997 premium was a postpetition debt and if it represented an "actual, necessary cost" or expense of preserving the estate, it will be entitled to administrative expense status.

only Van–American has a claim to the premiums as the Annual Premium Agreement giving rise to the claim is between it and Debtor. Although the motion is silent on the point, Clarendon's claim may be limited to the bond amount forfeited inasmuch as Clarendon is named as the surety on the Reclamation Surety Bonds and the brief raises the issue of a claim for the amount forfeited under the bonds. Movants' Brief at IIA and Exhibits A, B. The motion before us is limited to the claim for premiums. The extent of either Van–American's or Clarendon's claim to the premiums as between themselves is not before us.

4. The 1996 premium is a prepetition obligation that is not entitled to administrative priority inasmuch as it became due April 28, 1996, and the bankruptcy was filed on November 19, 1996. *See* Movants' Brief at Exhibit C.

■ Debtor contends that the 1997 premium is not an administrative expense because movants knew Debtor did not need bonds because it had ceased mining and movants had been advised that Debtor was liquidating. This argument is without merit and misses the point. The bonds represent a joint and several obligation of Debtor (as principal) and Clarendon (as surety) to pay up to the amount of the bonds if Debtor fails to "faithfully perform all of the requirements ... of the Code of West Virginia...." Movants' Brief at Exhibits A and B. West Virginia law requires the bond to be posted and states:

> The period of liability for bond coverage begins with the issuance of a permit and continues for the full term of the permit plus any additional period necessary to achieve compliance with the requirements in the reclamation plan of the permit.

W.Va.Code § 22–3–11. The liability on the bond is the surety's and goes to the State of West Virginia.[5] The liability for the premium is owed by Debtor to Van–American. That Debtor is statutorily required to perform reclamation [6] does not make the payment of the premium to Van–American an actual and necessary expense of preserving this Debtor's chapter 11 estate. The bond, required so that damage inflicted by mining will be corrected at no cost to taxpayers,[7] remains in effect by operation of law until reclamation is performed, whether or not Debtor pays the premium to Van–American. The status of movants' claim for payment of the bond premium turns on the parties' obligation under the Annual Premium Agreement.

■ The Annual Premium Agreement is a prepetition contract between Debtor and Van–American and required Debtor to pay Van–American a premium. Movants argue that the Annual Premium Agreement is an executory contract. A contract is executory when substantial performance remains due by both parties, such that "the failure of either to complete performance would constitute a material breach excusing performance of the other". *In re Columbia Gas System, Inc. (Enterprise Energy Corp. v. U.S.)*, 50 F.3d 233, 239 (3d Cir.1995). Movants contend that Debtor's obligation constitutes an executory contract because Debtor was obliged by its agreement with Van–American to comply with West Virginia statutes and regulations governing reclamation. Van–American asserts that its obligation to comply with West Virginia law governing sureties was a significant obligation. We find that the Annual Premium Agreement is not an executory contract. First, the Agreement contains no reference to Debtor's obligation to comply with state law. It provides only for payment of the premium and posting of collateral in the amount of 25 percent of the face amount of the bond and states: "Other fees, conditions and charges, if applicable. *N/A* ". Movants' Brief at Exhibit C. If another contract exists, it is not a matter of record.[8] According to the record before us Debtor's only obligation under the Annual Premium Agreement is to pay the annual premium to Van–American. Debtor's reclamation obligations are owed to the State of West Virginia. Likewise, Van–American and Clarendon owe their obligations to comply with West Virginia surety law to West Virginia, not to Debtor. The bond was posted and

**5.** Debtor sold its equipment and abandoned its leases. The $38,000 bond was forfeited in its entirety by Van–American on April 3, 1997, and the $67,000 bond was forfeited on August 13, 1997. Pursuant to the $67,000 bond contract, however, the bond was adjusted and West Virginia was paid only $44,000 because a third party leased and began mining on part of the 66.74 parcel. Thus, the claim based on the bond forfeitures is for $82,000 ($38,000 plus $44,000). The forfeiture of the bonds in the matter before us does not affect the question of the status of the premium payments owed to Van–American.

**6.** Section 22–3–11 of the West Virginia Code provides that obligations under a mining permit

continue until reclamation is performed. *See West Virginia Division of Environmental Protection v. Kingwood Coal Co.*, 490 S.E.2d 823, 826, n. 5 (W.Va.1997).

**7.** *See In re N.P. Mining Co.*, 124 B.R. 846 (Bankr. N.D.Ala.1990), *reversed on other grounds*, 963 F.2d 1449 (11th cir.1992).

**8.** The Reclamation Surety Bonds create joint and several liabilities of Debtor and Clarendon. These, however, are owed to the State of West Virginia.

is irrevocable and Van–American owes no further performance to Debtor.

Furthermore, even if the obligations are as Van–American recites, when the only obligation under a contract is to pay money, the contract is not executory. *See In re Oxford Royal Mushroom Products, Inc.*, 45 B.R. 792, 794 (Bankr.E.D.Pa.1985), *citing* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6303–04. The only obligation under the Annual Premium Agreement was Debtor's to pay the premium. Accordingly, Van–American's claim to administrative expense status fails under an executory contract theory.[9]

*In the Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984), is illustrative of the point. In *Jartran*, an agency committed to advertising space for Jartran before Jartran filed a chapter 11 petition. Jartran was to pay for the ads after they ran but filed its chapter 11 before the ads ran. The advertising agency's claim for an administrative expense for the cost of the ads was denied because, even though Jartran enjoyed the benefit of the ads while it was a debtor-in-possession, no inducement by the debtor was necessary to trigger the advertising agency's performance postpetition. In *Jartran*, as in the case before us, the liability for the advertising costs was incurred irrevocably prepetition. In the matter at bench the bonds were obtained prepetition and were irrevocable, regardless of whether Debtor paid the premium to Van–American in succeeding years.

> [W]hile [debtor] enjoyed the benefits ... the transaction out of which these benefits arose was completed before the petition was filed and nothing could have been done to further or cancel the transaction after

the petition filing. Thus, the matter was outside the scope of § 503.

*In the Matter of Jartran, Inc.*, 732 F.2d at 589.[10]  *See also In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976) (severance pay claims entitled to administrative priority to the extent that they accrued based on postpetition employment because nothing the employer could have done postpetition would have affected the amount of severance pay accrued prepetition); *Denton & Anderson Co. v. Induction Heating Corp.*, 178 F.2d 841 (2d Cir.1949) (commissions not entitled to administrative priority when orders accepted prepetition were delivered and paid for postpetition and contract with debtor provided for payment of commission after orders were paid for). *Cf. In re N.P. Mining Co.*, 124 B.R. 846 (Bankr.N.D.Ala.1990), *reversed on other grounds*, 963 F.2d 1449 (11th Cir.1992) (bond premiums for postpetition period of active mining were allowed as an administrative expense).

---

**9.** Even if the contract was executory when the bankruptcy was filed, § 365 of the Bankruptcy Code provides that in a chapter 11 an executory contract may be assumed or rejected at any time before the plan is confirmed. The contract was not assumed either before or in the plan, inasmuch as this was a liquidating plan which was confirmed on August 29, 1997.

**10.** The court in *Jartran* also noted that
> the services performed ... after the filing of the petition, were significant and of value to Jartran. However, appellants do not allege

that Jartran, after the filing of the petition, requested that appellants continue work on ads for which the closing date had passed. Nor is it claimed that Jartran had [post-petition obligations to prevent post-petition performance]. 732 F.2d at 587. In the case at bar, Debtor had no obligation to prevent postpetition performance by the surety. The surety's performance vis-a-vis Debtor was completed prepetition. Payment on the bond was an obligation the surety owed to the State of West Virginia.