**In re COAL STRIPPING, INC., Debtors.**

**COAL STRIPPING, INC., Movants,**

v.

**CLARENDON NATIONAL INSURANCE COMPANY and Van–American Insurance Company, Respondents.**

Bankruptcy No. 96–26197 JKF.
Adversary No. SMG–10.

United States Bankruptcy Court,
W.D. Pennsylvania.

June 30, 1998.

F. Scott Gray, Pittsburgh, PA, for Debtor.

Alan G. McGonigal, Wheeling, WV, for Respondents.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is Debtor's Objection to Proof of Claim filed by Van–American Insurance Company in the amount of $119,307.75. We are asked to rule upon the matter in the nature of a summary judgment. The claim includes charges for a premium arrearage of $2,100 and administrative costs, fees, and expenses, including attorneys' fees, of $10,107.75. The portion of the claim that represents premium payments is disallowed in accordance with our Memorandum Opinion of December 10, 1997, as amended February 9, 1998, *In re Coal Stripping, Inc., (Clarendon National Insurance Company v. Coal Stripping, Inc.)*, 215 B.R. 500 (Bankr.W.D.Pa.1997). Debtor also contends that the surety has not credited it for canceled bonds. The issue of canceled bonds was not briefed or argued and we do not

address it here. The material facts, which are not in dispute, are as follows.

Prior to the filing of the chapter 11 petition, Debtor was engaged in strip mining coal on property it leased in West Virginia. In order to obtain a mining permit, West Virginia law requires the posting of reclamation bonds.[2] The statute provides:

> The period of liability for bond coverage begins with issuance of a permit and continues for the full term of the permit plus any additional period necessary to achieve compliance with the requirements in the reclamation plan of the permit.

W.Va.Code § 22–3–11(b). If the permittee fails to reclaim the mined property in accordance with law, the bond is forfeited to the State of West Virginia.

On April 28, 1993, Clarendon National Insurance Company and Van–American Insurance Company[3] (hereafter "Respondents") issued reclamation surety bonds on Debtor's behalf. One was in the face amount of $67,000 to cover Debtor's surface mining operations on 66.74 acres of land in Monongalia County, West Virginia. The other was in the face amount of $38,000 to cover Debtor's operations on 37.45 acres of land in the same county. Debtor ceased operating prepetition. Postpetition, Debtor's leases were deemed rejected by operation of law when Debtor neither assumed nor rejected them. Thereafter, Debtor sought to abandon the leases in order to clarify that the property could be repermitted for strip mining and an Order approving abandonment was entered on May 2, 1997. Because Debtor had not performed reclamation, the $38,000 bond was forfeited in its entirety to the State of West Virginia on April 3, 1997. A third party leased and began mining on part of the 66.74

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. West Virginia law requires, "at a minimum", that the land be restored. W.Va.Code § 22–3–13(b)(2). A special reclamation fund exists to rehabilitate mined areas. *See* § 22–3–11(g).

3. Van–American is the underwriter and Clarendon is named as the surety in the Reclamation Surety Bonds. *See* Memorandum Opinion of December 10, 1997, as amended February 9, 1998,

*In re Coal Stripping, Inc., (Clarendon National Insurance Company v. Coal Stripping, Inc.)*, 215 B.R. 500 (Bankr.W.D.Pa.1997). In that opinion we noted that only Van–American had a claim to the premiums as the Annual Premium Agreement giving rise to the claim was between it and Debtor. We also recognized that Clarendon's claim may be limited to the bond amount forfeited inasmuch as Clarendon is named as the surety on the Reclamation Surety Bonds. The Respondents' rights to payment *inter se* have no bearing on the issue before us.

acre parcel and, therefore, the $67,000 bond was forfeited on August 13, 1997, only in the amount of $44,000. The West Virginia Department of Environmental Protection released $23,000. Thus, the bond forfeiture amount is $82,000 ($38,000 plus $44,000), although the claim is filed in the amount of $119,307.75.

The bonds represent a joint and several obligation of Debtor, as principal, and Respondents as surety. Debtor's obligation to reclaim runs to the State of West Virginia and the surety's obligation on the bonds also goes to the State of West Virginia. *See* Memorandum Opinion of December 10, 1997, as amended February 9, 1998, *In re Coal Stripping, Inc., (Clarendon National Insurance Company v. Coal Stripping, Inc.),* 215 B.R. 500 (Bankr.W.D.Pa.1997). Respondents assert that West Virginia would have an administrative claim and, therefore, pursuant to § 509, their claim would have that same priority. Section 509 provides, in pertinent part, that "an entity that is liable with the debtor on ... a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. § 509(a). *Cf. In re Richardson,* 193 B.R. 378 (D.D.C.1995), *aff'd* 107 F.3d 923 (D.C.Cir.) (TABLE, TEXT IN WESTLAW), *cert. denied* —— U.S. ——, 118 S.Ct. 143, 139 L.Ed.2d 90 (1997) (surety paid nondischargeable debt; surety's claim is nondischargeable).

Respondents' position in these proceedings has been that

> it does not matter whether [West Virginia] used the money from the forfeited bonds for actual physical reclamation of the sites or to cover fines, penalties and other assessments flowing from the debtor's failure to comply with the law. In either event, [West Virginia's] claim would have been entitled to administrative expense priority ....

Response to Objection to Proof of Claim at 5 [unnumbered]. Respondents also seek an evidentiary hearing in the event this court rejects their legal arguments. We reject Respondents' arguments and, accordingly, we will schedule an evidentiary hearing.

Many of the cases that address environmental claims concern hazardous waste and are distinguishable from the matter at bar. Not all deal with a contention that the claim holds priority status. For example, in *In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988), the court concluded that the lessor's claim for toxic waste clean-up expenses, for which the lessor was jointly responsible with the debtor, was part of the lessor's rejection damage claim and, therefore, was unsecured. The case at bench does not involve rejection damages.

*Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), and *In re Torwico Electronics, Inc.,* 8 F.3d 146 (3d Cir.1993), *cert. denied* 511 U.S. 1046, 114 S.Ct. 1576, 128 L.Ed.2d 219 (1994), are similarly inapposite. *Ohio v. Kovacs* involved a hazardous waste site. Although originally filed as a chapter 11, *Kovacs* was converted to a chapter 7 and the issue was whether the obligation to pay the clean-up costs was dischargeable. The case at bench does not involve dischargeability. There was no question raised about administrative claims in *Kovacs* as there is in the instant matter. *Torwico Electronics* distinguished *Ohio v. Kovacs, supra,* and held that a chapter 11 debtor's obligations under a state's clean-up order was not a claim within the meaning of the Bankruptcy Code because the state did not have a right to payment. The court found that the state had the right to force the debtor to comply with the New Jersey environmental laws, even though the debtor had to spend money to comply. The court distinguished the exercise of the state's regulatory powers from the state's requiring the debtor to pay it money. The court of appeals cited *In re Chateaugay,* 944 F.2d 997 (2d Cir.1991), where the court distinguished an order to end or ameliorate on-going pollution from an order which converts the injunction to a monetary obligation. *Torwico Electronics,* 8 F.3d at 149–50, citing *In re Chateaugay,* 944 F.2d at 1008. In the matter before us, the state of West Virginia was paid because the bonds posted by Debtor were forfeited. We must decide whether the payment was entitled to priority status. This is a chapter 11 and Debtor is a debtor-in-pos-

session. In *In re Pierce Coal & Construction, Inc.*, 65 B.R. 521 (Bankr.N.D.W.Va. 1986), the court recognized that "expenses occasioned by the debtor in possession while operating as a debtor in possession are 'actual and necessary costs and expenses of preserving the estate' and, therefore, entitled to administrative priority." 65 B.R. at 530, citing 11 U.S.C. § 503(b)(1)(A). Thus, we must determine whether West Virginia's right to payment against the estate would have been a postpetition cost or expense incurred to preserve the estate. 11 U.S.C. § 503(b)(1)(A).

In *Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137 (3d Cir.1985), the court held that South Carolina's hazardous waste clean-up order was a general unsecured claim as it had not been reduced to judgment. The creditor seeking subrogation to the state's status had a contractual indemnity claim which the court held was not superior to other general unsecured claims. After *Southern Railway Co.*, the Court of Appeals for the Third Circuit decided *Commonwealth of Pa., Dept. of Environmental Resources v. Conroy*, 24 F.3d 568 (3d Cir.1994). *Conroy* addressed whether priority status might ap-

ply to claims for removal of hazardous wastes. The court stated: "*Southern Railway* said nothing about whether a bankruptcy court may grant administrative expense priority to the costs that an environmental agency incurs in cleaning up a hazardous waste site that could not be abandoned under state law." 24 F.3d at 570. The court cited with approval two cases [4] that found expenses incurred to remove hazardous wastes to be necessary to preserve the estate. The case at bench, however, does not purport to involve clean-up of hazardous wastes on property that cannot be abandoned from the estate.[5] Here, the leasehold has been abandoned and no contention has been made that the reclamation involved clean-up of hazardous wastes. Indeed, as of now, the record is devoid of evidence as to whether West Virginia actually rehabilitated any of the land postpetition.[6]

In *Commonwealth of Pa., Dept. of Environmental Resources v. Conroy*, 24 F.3d 568 (3d Cir.1994), the court approved of the principle that when a site cannot be abandoned due to hazardous waste, the cost of clean-up is an administrative expense. *Conroy* also

**4.** *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir. 1991); *In re Wall Tube & Metal Products, Co.*, 831 F.2d 118 (6th Cir.1987).

**5.** In *Conroy* the court of appeals noted that *Southern Railway* has been interpreted as declaring that *Ohio v. Kovacs* resolved the question of whether hazardous waste clean-up costs are entitled to administrative expenses. In *Conroy*, however, the court opined that *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), indicates that the Supreme Court does not so view *Kovacs*. *Midlantic* involved toxic waste. The issue was whether the bankruptcy trustee could abandon property in contravention of laws and regulations "reasonably designed to protect the public health or safety." 474 U.S. at 496, 106 S.Ct. at 757. The Court held that abandonment could not be authorized until the lower court formulated conditions to adequately protect the public health and safety. In the pending matter, abandonment has already occurred.

**6.** We are aware of *In re Smith–Douglass, Inc.*, 856 F.2d 12 (4th Cir.1988), which held that where the debtors had no unencumbered assets and there was no serious risk to public health and safety, unconditional abandonment of the

property subject to environmental clean-up by the trustee was permissible. *Smith–Douglass* involved an action by the state itself which had monitored the facility and, while finding environmental violations, had never taken enforcement action. The court held an evidentiary hearing on the motion to abandon after which it concluded that environmental violations existed but did not present a danger of imminent harm to the public. *Id.* at 14–15. The court further stated that environmental clean-up costs are properly administrative expenses but, because there was no "serious public health and safety risks posed by the conditions", in that case, *id.* at 17, and the debtor had no unencumbered assets, abandonment could be authorized. However, "where the estate has unencumbered assets, the bankruptcy court should require stricter compliance with state environmental law before abandonment is permitted." *Id.* In the matter before us all creditors were served with notice of Debtor's motion to abandon, no objection to abandonment was made by any creditor, and an order was entered authorizing same. Likewise, there has been no allegation that the claim arises due to clean-up of hazardous waste or due to threatened harm to public health or safety. However, the issue before us is not whether the estate can abandon the property but whether administrative expense status should be accorded to Respondents' claim.

pointed out that it saw "no reason why the administrative and legal costs incurred by the DER in arranging for the cleanup cannot qualify as administrative expenses". The court allowed ten percent of the amount paid to the contractor as an administrative expense inasmuch as that amount was sufficiently substantiated as having been incurred by the Pennsylvania Department of Environmental Resources in arranging for cleanup. *Conroy*, 24 F.3d at 571. *See also Pierce Coal*, 65 B.R. at 531.

■ A strong policy exists in favor of the enforcement of environmental laws to protect public health and safety. However, in order to qualify as an administrative expense under the Bankruptcy Code, the claim concerning clean-up of nonhazardous waste with which we are faced must be shown to be:

(1) an actual, necessary cost of preserving the estate; § 503(b)(1)(A); or

(2) an actual, necessary cost incurred by a creditor "making a substantial contribution" to the chapter 11; § 503(B)(3)(D).

We conclude that if reclamation was performed postpetition the costs will be administrative expenses of this chapter 11 bankruptcy estate. Third Circuit law as stated in *Conroy* and West Virginia law as discussed in *Pierce Coal* support this conclusion. In *Pierce Coal* Transamerica Insurance Company sought administrative expense status on amounts it paid in bond forfeitures related to the debtor's surface mining operations. The court concluded that approximately ten percent was attributable to the debtor's postpetition operations and would be accorded administrative expense status. The other 90 percent was not accorded priority status. Accordingly, unless Respondents establish the fact of and costs attendant to postpetition clean-up by West Virginia, their claim will simply be an unsecured claim for the payment of money.

Because this is a chapter 11 with a debtor-in-possession, to the extent the state of West Virginia expended money to perform postpetition clean-up, it would have an administrative expense claim. This is so, even though Debtor did not operate in the chapter 11. Its status as a debtor-in-possession carries with it certain obligations, including an ongoing duty to restore the land. Therefore, Respondents, as surety subrogated to the state's claim under § 509, will have administrative expense priority to the same extent enjoyed by West Virginia.

■ In *In re Bill's Coal Company, Inc.*, 124 B.R. 827 (D.Kan.1991), the court determined that a fine for violation of environmental laws should be considered a cost incidental to operation of the business and where the penalty is for postpetition conduct, it should have administrative priority.[7] 124 B.R. at 830. Here, however, we have no evidence that Debtor operated postpetition and/or that any fines and penalties were or could have been assessed for postpetition conduct. As in *Dant & Russell* and *Bill's Coal*, to the extent Respondents offer no proof of a postpetition entitlement, they will not have met their burden of proving administrative priority. Fines and penalties imposed for prepetition misconduct on this leased property will not have administrative priority.

Debtor's objection to Respondents' claim, submitted on the pleadings, briefs, and arguments of counsel, is in the posture of a motion for summary judgment. Because a determination of the allowed administrative portion of the claim cannot be resolved without additional evidence, summary judgment cannot be granted. An evidentiary hearing will be scheduled, at which Respondents shall have the opportunity to establish their claim.

■ To summarize, (1) Respondents must establish actual reclamation costs incurred by West Virginia postpetition, and that amount, not to exceed $82,000, will be entitled to administrative priority if proven. (2) Fines and penalties assessed for prepetition misconduct will not be allowed as administrative expenses. (3) Fines and penalties, if proven for postpetition misconduct, will be allowed

---

7. The court in *Bill's Coal* agreed that penalties assessed for prepetition misconduct or the continuing effect of prepetition misconduct should *not* be considered an administrative expense. 124 B.R. at 829.

as administrative expenses. (4) Respondents' claim for attorney's fees is deferred to the evidentiary hearing. Allowance of attorney's fees as an administrative expense depends on whether a "substantial contribution" has been made to the chapter 11. *In re Appliance Store, Inc.*, 181 B.R. 237 (Bankr. W.D.Pa.1995); 11 U.S.C. § 503(b)(3), (4). No proof of any substantial contribution has been placed of record but counsel may offer such evidence at the trial. (5) Debtor shall have the opportunity to substantiate its contention that it has not been credited for canceled bonds.